# United States Court of Appeals
## For the First Circuit

No. 06-1606

HOWARD T. DOUGLAS,

Plaintiff, Appellant,

v.

J.C. PENNEY COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Michael O. Shea, with whom Law Office of Michael O. Shea, P.C.
was on brief, for appellant.
Karla K. Longoria, for appellee.

January 18, 2007

**TORRUELLA**, **Circuit Judge**.  Howard T. Douglas ("Douglas") worked for J.C. Penney Company, Inc. ("J.C. Penney") from 1993 until he was terminated in March 2002.  Douglas then sued J.C. Penney for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Mass. Gen. Laws ch. 151B, claiming damages for (i) discrimination, harassment, and a hostile work environment because of his gender and race, and (ii) discrimination, harassment, and a hostile work environment in retaliation for filing complaints relating to race and gender discrimination.  The district court granted summary judgment on all claims to J.C. Penney.  Douglas v. J.C. Penney Co., 422 F. Supp. 2d 260 (D. Mass. 2006).  Douglas appeals the grant of summary judgment.  After careful consideration, we affirm.

## I.  Background

We review a district court's grant of summary judgment de novo, giving the non-moving party the benefit of any reasonable inferences.  Cox v. Hainey, 391 F.3d 25, 27 (1st Cir. 2004).  The undisputed facts of this case are relatively straightforward. Douglas is an African-American male.  From 1993 until 1997, Douglas worked at J.C. Penney stores in Michigan.  During this time, Douglas met the sales and inventory targets set for him by J.C. Penney, and his supervisors rated him as a "high potential" employee who was "promotable."

-2-

In July 1997, Douglas was transferred to the Men's Department in the J.C. Penney store in Holyoke, Massachusetts. Douglas' first supervisor in Holyoke was Bill Lovan ("Lovan"), a Caucasian male. Lovan continued to rate Douglas as "high potential" and "promotable" in his 1997 and 1998 end-of-the-year performance evaluations. However, by this time, Douglas was not meeting his sales and inventory targets. In his 1999 performance evaluation, Lovan no longer rated Douglas as "high potential." In his 2000 end-of-the-year performance evaluation, Lovan gave Douglas a "4" rating (out of 5, with 1 being the highest), meaning that Douglas was not meeting expectations. That year, Douglas was ranked 23rd out of 23 Men's Department managers in the Northeast Region for sales. Douglas' performance evaluation for 2000 warned:

> By the end of 90 days, we require that you accomplish all the objectives set forth [and] develop no new problem areas . . . . If you do not earn back a "3" rating by the time you are re-evaluated, your rating could be changed to a "5" and your employment could be terminated.

Douglas does not allege that any of the performance evaluations up to this point were influenced by race or gender bias.

In 2001, two major changes occurred at the Holyoke store. First, Serena Olsen ("Olsen") replaced Lovan as store manager and as Douglas' immediate supervisor. Olsen is a Caucasian female. Second, the Holyoke store was remodeled, resulting in construction and overall disruption to the store. During this period, the Men's Department was moved to a different floor.

Olsen's performance evaluation of Douglas at mid-year 2001 was slightly more critical than, but otherwise largely consistent with, the end-of-year performance evaluation given by Lovan for 2000. The mid-year 2001 evaluation noted, among other problems, that Douglas lacked a "sense of urgency," that he failed to meet "core standards," and that he did not adequately manage his subordinates.[1] This evaluation also stated that Douglas could be terminated in 90 days if his performance did not improve. In March 2002, Olsen gave Douglas his final performance evaluation and terminated him. This performance evaluation was similar to the end-of-the-year evaluation given by Lovan for 2000 and the mid-year 2001 evaluation given by Olsen. This evaluation showed that Douglas' sales had declined 9.2% in the past year, that his department was one of the lowest-performing in the Holyoke store, and that he was ranked 23rd out of 24 Men's Department managers in sales. Douglas claims that Olsen's negative performance evaluations were the result of race and gender bias.

Douglas identifies a number of incidents which he perceived as indicating that Olsen discriminated against him on the basis of race and gender. First, Douglas points to the fact that Olsen failed to reprimand a co-worker for saying during a meeting, "I can't believe we let those people dress like that," referring to

---

[1] These evaluations were echoed in e-mails and other evaluations provided to Olsen by other J.C. Penney employees.

-4-

two young Hispanic female employees who had walked by the co-worker earlier. Second, Douglas states that Olsen once referred to an employee as a "young, black girl" when she usually referred to employees by name; Douglas claims that he complained to Olsen about the incident. Douglas further alleges that Olsen would often have lunch with female employees and not invite him. Douglas also contends that Olsen reprimanded him for cleanliness and absenteeism issues when she did not reprimand other Caucasian or female employees for the same problems. Lastly, Douglas points to a decision to replace an African-American model with a Caucasian model as evidence of bias. After this decision was made, Douglas complained to Olsen that he thought that the decision was discriminatory.

## II. Discussion

The district court's thoughtful and thorough opinion correctly resolved Douglas' claims; thus, we need only address the main points of this case. When a plaintiff alleges discrimination resulting in a Title VII violation, the plaintiff must first prove a prima facie case by showing:

> (1) [he] is a member of a protected class; (2) [his] employer took an adverse employment action against [him]; (3) [he] was qualified for the employment [he] held; and (4) [his] position remained open or was filled by a person whose qualifications were similar to [his].

Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001) (quoting Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999)); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  After the plaintiff establishes a prima facie case, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its adverse employment action.  Straughn, 250 F.3d at 33.  If the employer demonstrates such a reason, the burden returns to the employee to show that the proffered reason was mere pretext, and that the true reason was prohibited discrimination.[2]  Id. at 34.

The district court found that Douglas made a prima facie case.  We agree; the burden for establishing a prima facie case is not onerous.  Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003).

The district court also found that J.C. Penney had identified a legitimate, non-discriminatory reason for terminating Douglas' employment.  There can be no question that, after more than four years of declining sales and mediocre or poor job performance, J.C. Penney was justified in showing Douglas the door.

---

[2]  Mass. Gen. Laws ch. 151B appears to be slightly less stringent, in that it would allow a plaintiff to overcome a motion for summary judgment if the plaintiff shows that just one of the proffered reasons was pretextual.  Joyal v. Hasbro, Inc., 380 F.3d 14, 17 (1st Cir. 2004) (citing Lipchitz v. Raytheon Co., 751 N.E.2d 360, 366 (Mass. 2001)).  Even under this less stringent standard, as we explain, we find that Douglas' allegations, even if true, fail to prove any pretext whatsoever.

Thus, the burden returned to Douglas to show that J.C. Penney's identified reasons for terminating his employment were mere pretext for racial or gender bias. Douglas has not come close to satisfying this burden. Douglas largely relies on Thomas v. Eastman Kodak Co., 183 F.3d 38 (1st Cir. 1999), in which we held that a plaintiff could bring a claim where "an employer evaluates employees of one race less favorably than employees of another race who have performed equivalently, and . . . race, rather than some other factor, is the basis for the difference in evaluations." Id. at 58. We explained this holding by noting that "unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus." Id. at 59. Douglas claims that Olsen evaluated him in a different fashion than other Caucasian or female employees at J.C. Penney, and that this may have stemmed from stereotypes or other cognitive biases.

However, in Thomas, we relied on the fact that the disparities in subjective performance evaluations between employees of different races did not correlate with the individualized objective performance factors for those employees. Id. at 62-63. The same cannot be said in Douglas' case, where his performance evaluations showed not only subjective evaluations of poor performance, but also that Douglas consistently failed to meet the numerical sales and inventory targets set for him on a yearly basis. In particular, J.C. Penney presented evidence that by 2002,

Douglas' sales were less than 75% of what they were in 1997. Douglas attempts to explain his poor performance on the basis of the disruption caused by construction at the Holyoke store. He claims that the Men's Department suffered greater disruption than other departments and argues that his sales targets ought to have been adjusted to take account of that interference. J.C. Penney responds that the entire store experienced some losses, but that Douglas' department performed at a lower level than other departments during the construction. We note that at the same time that Douglas was terminated, J.C. Penney also terminated a Caucasian manager of another underperforming department at the Holyoke store. J.C. Penney also points out that Douglas' evaluations began to show a decline in his performance prior to the start of construction. Thus, there is little evidence that similarly situated employees at the Holyoke store were treated differently because of race or gender.

Furthermore, Douglas' allegations, even if true, have not established that the disparities in performance evaluations were due to race or gender bias. Douglas' performance evaluations were poor both in 2000, when he does not allege any race or gender bias, and in 2001, when he does allege bias. As for specific incidents that demonstrate race bias, Douglas identifies at most one possibly racially-tinged comment by a co-worker who was not Douglas' supervisor and as such is irrelevant, <u>see</u> <u>Medina-Muñoz</u> v. <u>R.J.</u>

Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) ("The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case."), and a few ambiguous comments by Olsen, which alone are insufficient to prove bias, see Straughn, 250 F.3d at 36 (holding that stray remarks might be considered evidence of bias only in combination with other evidence and if they were temporally close to the adverse employment decision). Further, Douglas presents no evidence of gender bias other than the fact that Olsen had lunch with female friends instead of himself. A supervisor's decision not to socialize with an employee during lunch is simply insufficient to prove gender discrimination.

Douglas' claims of retaliation and hostile work environment are similarly unsupportable. To establish a prima facie case for a hostile work environment claim, a plaintiff must prove:

> (1) that [he] is a member of a protected class; (2) that [he] was subjected to unwelcome sexual [or racial] harassment; (3) that the harassment was based upon sex [or race]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually [or racially] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). Douglas has offered no evidence that would support a finding that his work environment was "objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). To establish a claim of unfair retaliation, a plaintiff needs to prove that protected conduct and an adverse employment action are causally linked. Id. at 88. Douglas offered no evidence on causation, and thus, this claim must fail too.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

**Affirmed**.