Adaline TORRES–SANTIAGO,
Plaintiff,

v.

Gabriel ALCARAZ–EMMANUELLI,
et al., Defendants.

Civil No. 06–1349 (FAB).

United States District Court,
D. Puerto Rico.

May 22, 2009.

Ralph Vallone, Jr., Ralph Vallone, Jr. Law Office, San Juan, PR, for Plaintiff.

**30**

Jose J. Gueits–Ortiz, Department of Justice of Puerto Rico, Office of General Litigation, Marisela Fernandez–Rosales, Raul Castellanos–Malave, E. Umpierre Suarez, PSC, Beatriz Annexy–Guevara, Reichard & Escalera, Claribel Ortiz–Rodriguez, Sanchez–Betances, Sifre & Munoz–Noya Law Offices, PSC, Francisco J. Amundaray–Rodriguez Mercado & Soto, Eric R. Ronda–Del–Torro, Mercado & Soto, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On June 22, 2006, plaintiff Adaline Torres–Santiago ("Torres–Santiago") filed a verified amended complaint ("VAC") in which she alleged various federal and commonwealth law claims against Gabriel Alcaraz–Emmanuelli ("Alcaraz–Emmanuelli"), in his personal and official capacity as Secretary of Puerto Rico's Department of Transportation and Public Works ("DTOP," as the department is known locally), Fernando Vargas–Arroyo ("Vargas–Arroyo"), in his personal and official capacity as Executive Director of the Puerto Rico Highway and Transportation Authority, and Evan Gonzalez–Baker ("Gonzalez–Baker")[1] in his official capacity as President and General Manager of the Metropolitan Bus Authority ("AMA," as the authority is known locally). (Docket No. 25) Over the course of time the Court has

dismissed all of the claims against Vargas–Arroyo and Gonzalez–Baker as well as some of the claims against Alcaraz–Emmanuelli. (*See* Docket Nos. 48, 79, 121, 132) Torres–Santiago's sole remaining claims are a section 1983 equal protection claim, a Title VII claim,[2] and two Commonwealth law claims (i.e., Law 100 and Article 1802) against Alcaraz–Emmanuelli.

On May 5, 2009, Alcaraz–Emmanuelli moved for summary judgment. (Docket No. 104) Torres–Santiago opposed the motion on May 11, 2009. (Docket No. 117) For the reasons discussed below, the Court **GRANTS** defendant's motion for summary judgment.

## I. TORRES–SANTIAGO RELIED UPON INADMISSIBLE EVIDENCE TO SUPPORT HER OPPOSITION TO SUMMARY JUDGMENT

Torres–Santiago relies exclusively upon citations to her VAC in an effort to show a dispute as to an issue of material fact that could prevent summary judgment. To the extent that the VAC complies with the standards included in Fed. R.Civ.P. 56(e), it may support a party's opposition to summary judgment.[3] *See Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir.1991). Where a party relies exclusively upon its VAC and that document contains language in Spanish, however, the VAC must be accompanied by a certified

---

1. During the course of the proceedings Gonzalez–Baker was replaced by Santos–Delgado, who took his place as the head of AMA. (*See* Docket No. 99)

2. The Court erred in its April 20, 2009 order in which it stated that Torres–Santiago's section 1983 claim against Alcaraz–Emmanuelli was the sole remaining federal claim in the case. (Docket No. 79) Torres–Santiago's Title VII claim remained as well.

3. Torres–Santiago failed to sign the statement under penalty of perjury at the tail end of the

VAC. (Docket No. 25, p. 23) For this reason, the Court finds that Torres–Santiago fails to comply with the requirements of Fed.R.Civ.P. 56(e). Without this document there would be nothing in the record concerning any acts by Alcaraz–Emmanuelli suggestive of a discriminatory animus. Although the Court shall proceed to analyze the summary judgment motion and its opposition as if Torres–Santiago had actually signed the statement under penalty of perjury, it hereby states that her failure to sign the VAC provides an alternate basis for granting summary judgment in this case.

English language translation. *See* 48 U.S.C. § 864; L.Civ.R. 10(b); *Puerto Ricans For Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir.2008). A Court may not consider documents provided in the Spanish language. *Gonzalez–De-Blasini v. Family Dep't*, 377 F.3d 81, 89 (1st Cir.2004). This rule prevents the Court from considering a number of the factual allegations included in Torres–Santiago's VAC.

■■■■ In her VAC, Torres–Santiago provides her own uncertified translations for allegedly discriminatory remarks and in a few instances simply provides no translation. (*See* Docket Nos. 25, pp. 8–12, ¶¶ 23, 25, 29, 30, 34, 36; 118, pp. 4–7, ¶¶ 11, 12, 14, 21, 23, 24, 25) This proffered evidence cannot and will not be considered by the Court at summary judgment.[4] Accordingly, in adjudicating the motion for summary judgment the Court shall rely only on those relevant parts of the VAC referenced in Torres–Santiago's Local Rule 56 statement that were not obviously translated from Spanish without providing a certification.[5]

## II. FACTUAL BACKGROUND

Plaintiff Torres–Santiago worked as the President and General Manager of AMA from mid-January 2005 to February 5, 2006.[6] Although she tendered her own resignation, she claims that she was constructively forced to resign by defendant Alcaraz–Emmanuelli, the Secretary of DTOP, who discriminated against her based upon her age and sex, creating an intolerable environment in which to work.

As President and General Manager of AMA, Torres–Santiago held a "trust" position from which she could be removed at any time. The former governor, Anibal Acevedo–Vila, appointed Torres–Santiago to her position.

In late 2005, the Puerto Rico House of Representatives launched an investigation into allegations that Torres–Santiago ordered the deletion of certain reservations made by users of a program run by AMA named "call and travel." The reservation holders were to attend a public hearing at the House of Representatives. The House of Representatives issued findings concerning Torres–Santiago which lead to the creation of a Special Independent Prosecutor to investigate her alleged actions. Torres–Santiago has since been charged with five counts of altering public documents and one count of perjury before House of Representatives. A judge found probable cause to arrest Torres–Santiago on these charges and a preliminary hearing in her criminal case was scheduled for May 14 and 15, 2009.

Following the launch of the investigation into Torres–Santiago by the House of Representatives, Alcaraz–Emmanuelli "lost the trust" that he had for her and he requested her resignation in early February, 2006. Torres–Santiago resigned on February 5, 2006. In her letter of resignation Torres–Santiago does not reference any allegedly discriminatory acts that were committed

---

**4.** The Court also shall exclude from consideration those parts of the VAC that are conclusory or irrelevant. *See, e.g., Sheinkopf,* 927 F.2d at 1262.

**5.** Common sense suggests that all of the allegedly discriminatory remarks referenced in the VAC were made in Spanish (even those recounted only in English) but the record does not expressly show that, so the Court shall treat the few appearances of allegedly discriminatory remarks without translation as they appear in the VAC, in other words as if they were made in English and need no certified translation.

**6.** Torres–Santiago also worked as the head of AMA for years under a previous gubernatorial administration.

against her. Rather, she attacked the allegations against her in regards to the "call and travel" program and she remarked that Alcaraz–Emmanuelli did not give her the opportunity to clear up the doubts that he harbored concerning those allegations.

Torres–Santiago claims that Alcaraz–Emmanuelli's request for her resignation because of the "call and travel" scandal was a pretext for his actual motives which were age- and sex-based discrimination. She also alleges that acts that preceded her resignation constituted a hostile work environment. The acts which provide the basis for her claims of discrimination are alleged as follows:

1. During March of 2005, Torres–Santiago met with Alcaraz–Emmanuelli and unnamed others to discuss a report. In that meeting Alcaraz–Emmanuelli pointedly asked Torres–Santiago her age. Torres–Santiago did not answer. Alcaraz–Emmanuelli then told Torres–Santiago that her position at AMA was "made for men and not for women" because transportation was a "man's business."

2. On a different occasion, at an unnamed date and time, Alcaraz–Emmanuelli told Torres–Santiago that he did not want a jacket that AMA was planning to give him because Torres–Santiago and Alcaraz–Emmanuelli could not fit in the jacket together.

## III. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trialworthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

## B. 42 U.S.C. § 1983

▇▇▇ "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." *Omni Behavioral Health v. Miller,* 285 F.3d 646, 650–51 (8th Cir.2002); *see also Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 621 (1st Cir.2000). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants actions were a cause in fact or a proximate cause of their injury. *See Collins v. City Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Plaintiff satisfies the first element of proving a section 1983 claim. There is no question in this case that defendant Alcaraz–Emmanuelli acted under color of state law, given that he was the Secretary of DTOP and that he acted as such when he took each act that has been challenged in this case. Defendant, however, disputes whether Torres–Santiago was deprived of any federal right, privilege, or immunity. This issue shall be discussed in the following section. The Court finds it unnecessary to discuss the third element of a section 1983 claim.

## C. EQUAL PROTECTION

In her opposition to Alcaraz–Emmanuelli's motion for summary judgment Torres–Santiago clarifies that her section 1983 claim is for a violation of her constitutional right to equal protection. She argues that Alcaraz–Emmanuelli made remarks to her that were motivated by sex- and age-based animus. She states that these comments created a hostile work environment for her and that they also caused her to resign (i.e., constructive discharge). This multipart claim for a violation of her Fourteenth Amendment right to equal protection fails for several reasons.

▇▇ As an initial matter, Torres–Santiago's claim of age based discrimination pursuant to section 1983 is foreclosed by the ADEA. *See Tapia–Tapia v. Potter,* 322 F.3d 742, 745 (1st Cir.2003); *Lafleur v. Tex. Dep't of Health,* 126 F.3d 758, 760 (5th Cir.1997); *Chennareddy v. Bowsher,* 935 F.2d 315, 318 (D.C.Cir.1991); *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1369 (4th Cir.1989). Even if the claim were not foreclosed, it would be subject to rational basis analysis, rather than any form of heightened scrutiny. *See Izquierdo Prieto v. Mercado Rosa,* 894 F.2d 467, 471–73 (1st Cir.1990). As further explained below, the Court finds that Alcaraz–Emmanuelli's request for Torres–Santiago's resignation was motivated by a legitimate goal: extricating AMA from further controversy over the "call and travel" scandal. The Court also finds that Torres–Santiago's resignation rationally furthered Alcaraz–Emmanuelli's objective. Thus, Alcaraz–Emmanuelli's request for

Torres–Santiago's resignation meets the rational basis test. This leaves Torres–Santiago with two incidents as the remaining basis for her equal protection claim: (1) that Alcaraz–Emmanuelli once told her that he did not want a jacket because he and she could not fit into the jacket together; and (2) that Torres–Santiago's position at AMA was made for a man. Although the Court infers a sexual joke or perhaps an advance in the first comment, and a clear misogynistic rebuke in the second comment, these two comments are insufficient to make out an equal protection claim in this case.

 To prove a violation of the equal protection clause, Torres–Santiago must show that the defendant acted with discriminatory intent. *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896 (1st Cir. 1988) (citing *Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Discrimination on the basis of sex violates the equal protection clause if the discrimination fails to "serve important government objectives" and is not "substantially related to achievement of those objectives." *Lipsett*, 864 F.2d at 896 (quoting *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)). Because a showing of discriminatory intent is necessary to make out a claim of disparate treatment under Title VII, the analytical framework for proving discriminatory treatment pursuant to Title VII claims is equally applicable to claims of sex-based discrimination pursuant to the equal protection clause. *See Pontarelli v. Stone*, 930 F.2d 104, 113–14 (1st Cir.1991), *abrogated on other grounds, Graphic Comms. Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 4–5 (1st Cir.2001); *Lipsett*, 864 F.2d at 896; *White v. Vathally*, 732 F.2d 1037, 1039 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984).

 In a Title VII case, discrimination may be shown through direct evidence or through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett*, 864 F.2d at 909; *c.f., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Where a plaintiff produces direct evidence of discrimination, he or she may prevail without proving all of the elements of a *prima facie* case under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

 Where there is evidence of both discriminatory and non-discriminatory animus, and the plaintiff requests it, the court may evaluate the evidence through the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See Moron–Barradas v. Dep't of Educ. of the Commonwealth of Puerto Rico*, 488 F.3d 472, 480 (1st Cir.2007) (*citing Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir.2003)). Under this framework, a "plaintiff's burden is tempered so that [he or] she need prove only that the discriminatory action was a *motivating factor* in an adverse employment decision." *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002). Under the mixed-motive analysis, codified at 42 U.S.C. § 2000e–2(m), the plaintiff need only establish that the employment decision was motivated in part by a discriminatory animus. Under this framework, however, "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Desert Palace, Inc.*, 539 U.S. at 94, 123 S.Ct. 2148. To avail itself of the affirmative defense, the employer must "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible

motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B).

■ Where there is no direct evidence of discrimination, the court may apply the *McDonnell Douglas* framework. Because Torres–Santiago has adduced no evidence of direct discrimination and because she has not utilized the mixed motive analysis in her briefs, the Court shall apply the *McDonnell Douglas* framework to the claim that Alcaraz–Emmanuelli constructively terminated her because he discriminated against her on the basis of her sex.

■ To prove a *prima facie* case of discrimination under this framework, the plaintiff must establish by a preponderance of the evidence (1) that the plaintiff is within a protected class; (2) that his [or her] employer took an adverse action against him [or her]; (3) that [he or] she was qualified for the employment [he or] she held; and (4) that [his or] her position remained open or was filled by a person whose qualifications were similar to [his or] hers. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 13–14 (1st Cir.2007); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 32 (1st Cir.1990). The defendant may then rebut the plaintiff's *prima facie* case by providing a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant provides a legitimate, non-discriminatory reason, then to defeat summary judgment the plaintiff must demonstrate that the reason was pretextual. This may be done by showing that a discriminatory reason more likely motivated

the defendant, or by showing that the proffered reason lacks credibility. *Id.* at 256, 67 L.Ed.2d 207.

■ Alcaraz–Emmanuelli does not dispute that Torres–Santiago states a *prima facie* case: she is a woman, she claims to have been harassed into resigning; she was qualified to direct the AMA; and she was replaced by Gonzalez–Baker. Alcaraz–Emmanuelli asserts a legitimate reason for requesting Torres–Santiago's resignation: he wanted to save the "good name" of AMA and he had lost faith in Torres–Santiago's ability to lead the organization. This occurred after the Puerto Rico House of Representatives launched an investigation into allegations that Torres–Santiago cancelled the appointments of certain passengers who participated in the "call and travel" program. Torres–Santiago claims that Alcaraz–Emmanuelli's proferred legitimate explanation for requesting her termination is mere pretext for his actual discriminatory motive, but she fails to produce any evidence to discredit Alcaraz–Emmanuelli's explanation.[7]

■ The only admissible evidence of discrimination in the record are the two comments referenced above concerning (1) Torres–Santiago and Alcaraz–Emmanuelli fitting into the same jacket together, and (2) Torres–Santiago's position being a position for a man. These comments are not sufficient to show that Alcaraz–Emmanuelli's request for Torres–Santiago's resignation was more likely motivated by sex-based discrimination than by his proffered legitimate rationale. It is notable, of course, that Alcaraz–Emmanuelli was in essence Torres–Santiago's supervisor, but that fact alone will not carry the day for

**7.** To the contrary, Alcaraz–Emmanuelli submits evidence to bolster his rationale by showing that the allegations against Torres–Santiago were substantial enough to have enabled a judge to find probable cause to support her arrest on charges related to the House of Representative's investigation into her involvement in the "call and travel" program.

Torres–Santiago. Torres–Santiago fails to provide additional evidence that could be helpful to her, such as the date that the "jacket" comment occurred. If, for example, it occurred the day prior to Alcaraz–Emmanuelli's request for Torres–Santiago's resignation, then it would be much stronger evidence that the request was motivated by a discriminatory motive. As it stands, the record simply shows that this one comment occurred at some point in time during Torres–Santiago's tenure as President and General Manager of the AMA. It could have occurred as far back as March of 2005 when Alcaraz–Emmanuelli told Torres–Santiago that her position at AMA was made for a man. This comment is too far removed from the date that Alcaraz–Emmanuelli requested Torres–Santiago's resignation to provide strong evidence of discriminatory animus. Altogether, these two comments do not show that Alcaraz–Emmanuelli's request for Torres–Santiago's resignation was more likely motivated by discrimination than by his loss of faith in her because of her involvement in the "call and travel" scandal. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating that an employer would be entitled to judgment as a matter of law where "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."); *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir.2003) (holding that one incident providing a slight suggestion of pretext was insufficient to survive summary judgment); *Zapata–Matos v. Reckitt & Colman, Inc.*, 277 F.3d 40, 47 (1st Cir.2002) (same).

■■■■ Torres–Santiago's claim is no more meritorious when construed as a hostile environment claim. To prove a hostile

work environment, Torres–Santiago must show that she was subjected to severe or pervasive harassment that materially altered the conditions of her employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (additional citation omitted)). The harassment must be both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive, and the victim must also perceive the conduct in question to be hostile or abusive. *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275 (*citing Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). There is no "mathematically precise test" for determining if conduct reaches the threshold of being so severe or pervasive that it creates a work environment abusive to employees. *Harris*, 510 U.S. at 22–23, 114 S.Ct. 367. To determine if a reasonable person would find a work environment hostile or abusive, a court must consider the totality of the circumstances. *Id.* at 23, 114 S.Ct. 367. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir.2005). For example, " 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

As summarized by the First Circuit Court of Appeals, to succeed on her hostile work environment claim Torres–Santiago must prove: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on her membership in a protected class; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) that the objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *Torres–Negron v. Merck & Co.,* 488 F.3d 34, 39–40 (1st Cir.2007); *Douglas,* 474 F.3d at 15; *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001). The Court finds that Torres–Santiago has successfully proven the first three factors and thus it shall focus its analysis on the fourth factor.

 The two comments relied upon by Torres–Santiago are Alcaraz–Emmanuelli's rejection of a jacket he was offered because he said that he and Torres–Santiago could not fit into the jacket together, and Alcaraz–Emmanuelli's statement that Torres–Santiago held a man's position. Neither comment was physically threatening, nor has Torres–Santiago shown how the comments interfered with her work performance. The Court accepts Torres–Santiago's suggestion that the comments by Alcaraz–Emmanuelli qualify as an advance, a sexual joke, and as derogatory, but even then they do not reach the threshold of treatment so severe or pervasive as to alter Torres–Santiago's working conditions. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (*per curiam*) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' ")(quoting *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275); *Pomales v. Celulares. Telefonica, Inc.,* 447 F.3d 79, 83–84 (1st Cir.2006) (holding that a male supervisor grabbing his crotch and gesturing in the direction of a female employee was not sufficient to state a hostile work environment claim); *Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990) ("[A]n isolated sexual advance without more, does not satisfy the requirement that an employee asserting a cause of action for hostile environment discrimination demonstrates an abusive environment.").

In summary, Torres–Santiago fails to state an equal protection claim under either a theory of discriminatory discharge or hostile work environment because she adduces minimal evidence of prejudice at summary judgment and because Alcaraz–Emmanuelli's proffered a well-supported legitimate explanation for requesting Torres–Santiago's resignation. Accordingly, the Court dismisses Torres–Santiago's section 1983 equal protection claim.

### D. TITLE VII CLAIM

As mentioned earlier, *supra* note 2, the Court erred in its April 20, 2009 order in which it stated that Torres–Santiago's section 1983 claim against Alcaraz–Emmanuelli was the sole remaining federal claim in the case. (Docket No. 79) Torres–Santiago's Title VII claim remained as well. Nonetheless, because the analysis of the equal protection claim carried out above is identical to a Title VII analysis, the Court hereby dismisses plaintiff's Title VII claim in addition to her section 1983 claim.

### E. COMMONWEALTH LAW CLAIMS

Because no federal claims remain to ground jurisdiction in this case, plaintiff's

**38**

commonwealth law claims against defendant are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Alcaraz–Emmanuelli's motion for summary judgment. Plaintiff's **section 1983 "equal protection"** claim against Alcaraz–Emmanuelli is **dismissed with prejudice.** Plaintiff's **Title VII** claim against Alcaraz–Emmanuelli in his official capacity is also **dismissed with prejudice.** Plaintiff's **Commonwealth law** claims against Alcaraz–Emmanuelli in his individual capacity are **dismissed without prejudice.** Judgment shall enter accordingly.

The jury trial scheduled to commence on May 26, 2009 is vacated and set aside.

**IT IS SO ORDERED.**