STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-16-0014

TAMER TILAHUN,
CHARLES KNIGHT, and
ANTHONY POINTER,

Plaintiffs,

v.

ORDER ON MOTION
FOR SUMMARY JUDGMENT

T&D TIMBER PRODUCTS, LLC,
TRAVIS STRATTON and
LISA STRATTON, individually
and d/b/a T&D TIMBER PRODUCTS,

Defendants.

Tamer Tilahun, Charles Knight, and Anthony Pointer bring this action against T&D Timber Products, LLC ("LLC") as well as Travis and Lisa Stratton, individually and d/b/a T&D Timber Products ("T&D"), alleging intentional race discrimination based on disparate treatment and a hostile work environment pursuant to 42 U.S.C. § 1981. Defendants have moved for summary judgment. The motion is granted with respect to Defendant LLC and denied in all other respects.

## I. Summary Judgment Factual Record

Plaintiff Knight worked for T&D for about two months from September to November 2014. (DSMF ¶ 10.) Mr. Knight suffered from a medical issue in October 2014 and was out for a week. (DSMF ¶ 11.) T&D offered Mr. Knight the opportunity to do light duty tasks upon his return to work. (DSMF ¶ 12.) Ms. Stratton sent Mr. Knight a letter instructing him to return to work by November 10, 2014. (PASMF ¶ 25.) His supervisor, Luke Jalbert, subsequently called him on November 4, 2015 and told him if he did not return to work the following day than he would be terminated. (*Id.*) Mr.

1

Knight was unable to secure childcare in time to return to work on November 5, 2014. (PASMF ¶ 26.)

Plaintiff Pointer worked for T&D for about one month during September and October 2014. (DSMF ¶ 15.) T&D told Mr. Pointer he was hired on a probationary basis. (DSMF ¶ 16.) T&D's employee handbook did not provide for a probationary period. (PASMF ¶ 12.) Mr. Pointer argues he was told after two weeks that he had satisfied his probationary period, and he received a raise of $2 an hour; Defendants dispute that claim. (PASMF ¶12.) Mr. Jalbert told Mr. Pointer that Ms. Stratton approved the raise. (PASMF ¶ 14.) Mr. Stratton maintains he was dissatisfied with Mr. Pointer's work after a month of probation and terminated him. (DSMF ¶¶ 17-18.) Ms. Stratton called Mr. Pointer into her office and informed him he was having trouble keeping up; and then fired him. (PASMF ¶ 16.)

Plaintiff Tilahun worked for T&D from April to November 2014. (DSMF ¶ 19.) Mr. Tilahun states he was fired twice and subsequently rehired by T&D before he resigned in November 2014. (POSMF ¶¶ 19-20.) T&D terminated him in September for driving his vehicle in a "dangerous manner" in T&D's parking lot. (DSMF ¶ 19.) Mr. Tilahun denies he was driving in a dangerous manner. (POSMF ¶ 19.) He was rehired in late September 2014. (DSMF ¶ 20.)

Mr. Knight, Mr. Pointer, and Mr. Tilahun were the only African American employees of T&D at the time they were employed. (PSAMF ¶ 3.) Mr. Tilahun alleges Mr. Stratton made the following comments to him while employed at T&D:

- He said he would punch Mr. Tilahun in the face if Mr. Tilahun was going to sue him;

- He asked Mr. Tilahun why his skin was not dark enough;

- He said Mr. Tilahun was working with the gypsies;

2

- He called Mr. Tilahun stupid and fat; and

- He fired Mr. Tilahun for wearing music headphones at work despite everyone else using them.

(DSMF ¶ 31-32; PASMF ¶ 7.) Mr. Tilahun alleges his supervisor at T&D, Mr. Jalbert, made the following comments to him while he was employed at T&D:

- He told Mr. Tilahun he was short and fat;

- He said most Ethiopians are skinny and tall; and

- He asked Mr. Tilahun what the fuck was wrong with him, what happened to him, and what did his parents do?;

(DSMF ¶ 26.)[1] On the day he resigned, Mr. Tilahun claims Mr. Jalbert was berating him as follows:

- He called Mr. Tilahun saying "racist stuff;"

- He told Mr. Tilahun to "Hurry up you short fuck;"

- He asked Mr. Tilahun "Why can't you handle this job like everybody else does it?"

- He kept threatening to fire Mr. Tilahun if he made any mistake; and

- He told Mr. Tilahun to smile so he could be seen.

(PASMF ¶ 9; *see also* Tilahun Dep. 32:21-35:13.) Tilahun informed Ms. Stratton that he

---

[1] In Plaintiffs' Additional Statement of Material Facts Mr. Tilahun alleges Mr. Jalbert also said, "You'll have to smile so we can see you because you're so dark;" "How come you're fatter than most Ethiopians?"; "You'll have to work harder than everyone else if you want to get paid—like you're running for food in Africa, where people are starving?"; "Most black people are rude and disrespectful;" "You know white people are smarter than blacks?" and "You're such a dumb fuck." However, the only record citation supporting the statement of fact is to paragraph 11 of the complaint, thus the court does not rely on it for purposes of summary judgment. *Deutsche Bank Nat'l Trust Co. v. Raggiani*, 2009 ME 120, ¶ 6, 985 A.2d 1. Moreover, Defendants' answer denied these allegations. Plaintiffs did cite to parts of Mr. Tilahun's deposition where he stated Mr. Jalbert made the above mentioned statements, but cited it in support of a different statement of material fact, paragraph nine.

was resigning because he could no longer tolerate the racially hostile treatment he received. (PASMF ¶ 10.)

Mr. Knight and Mr. Pointer frequently witnessed Mr. Stratton and Mr. Jalbert making comments to Mr. Tilahun. (PASMF ¶ 17.) Mr. Knight perceived the comments directed a Mr. Tilahun as also directed at him and Mr. Pointer. (PASMF ¶ 20.) Mr. Knight believes the only reason he was not targeted directly was because he is six feet and four inches tall. (PASMF ¶ 22.) Moreover, Mr. Jalbert made comments to Mr. Pointer during lunch breaks about "fried chicken" and "grape soda," and other employees laughed at the comments. (PASMF ¶ 15.) Mr. Pointer recognized the references to fried chicken and grape soda as racial stereotypes. (PASMF ¶ 15.) Mr. Jalbert also asked Mr. Knight if he liked grape soda and Mr. Knight also recognized the comment as a racial stereotype. (PASMF ¶ 19.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is warranted "only if the portions of the evidentiary record 'referred to in the statements [of material facts] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.'" *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169 (quoting M.R. Civ. P. 56(c)). A fact is "material" if it is one that "can affect the outcome of the case." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists "when the fact finder must 'choose between competing versions of the truth.'" *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). In deciding whether there is a genuine dispute about a material fact, the court must view the record in the light most favorable to the non-moving party or parties—here Plaintiffs—and resolve any ambiguities in their

4

favor. *Cookson v. Brewer School Dep't*, 2009 ME 57, ¶ 12, 974 A.2d 276; *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015).

The summary judgment process is not a substitute for trial; if material facts are in dispute, the matter should be resolved through fact-finding at trial. *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. This principle has particular force with respect to employment discrimination claims, which are "often difficult to assess at the summary judgment stage." *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 15, 45 A.3d 722. The fundamental question is whether an employee has generated an issue of fact regarding an employer's motivation or intent, and this question "is one heavily dependent on the individual facts before the court." *Id.* The Law Court further observed in *Daniels* that "where a plaintiff in a discrimination case makes out a *prima facie* case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious' about granting summary judgment." *Id.*

## B. Discrimination Claims under 42 U.S.C. § 1981

Section 1981 "allows for distinct claims," including claims alleging disparate treatment, retaliation, and hostile work environment. *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011). Plaintiffs are asserting claims for disparate treatment and hostile work environment.

### 1. Disparate Treatment

In order to prevail in a section 1981 disparate treatment claim, a plaintiff must establish purposeful discrimination. In the absence of direct evidence of discrimination, courts evaluate such a claim using the three-step burden-shifting framework articulated in 1973 in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, the employee must present *prima facie* evidence of

5

unlawful discrimination. The burden of production then shifts to the employer to rebut the claim with a legitimate, non-discriminatory reason for the adverse employment action alleged. Finally, the burden shifts back to the employee to produce evidence that the employer's stated reason was a pretext. *Bhatti*, 659 F.3d at 70; *see also Daniels*, 2012 ME 80, ¶ 14, 45 A.3d 722 (applying *McDonnell Douglas* framework in Maine Human Rights Act claims).

Four elements are required to establish a *prima facie* case of discrimination based on disparate treatment. A plaintiff must demonstrate that (1) he is a member of a protected class; (2) he is qualified for his job; (3) his employer took an adverse employment action against him; and (4) there is some evidence of a causal connection between his membership in a protected class and the adverse employment action. *Bhatti*, 659 F.3d at 70.

At the summary judgment stage, a "relatively low threshold showing [is] necessary to establish a *prima facie* case." *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003); *see also Douglas v. J.C. Penney Co.*, 474 F.3d 10, 14 (1st Cir. 2007) ("the burden for establishing a *prima facie* case is not onerous."). Plaintiffs have made a sufficient *prima facie* showing to support their claims of employment discrimination based on disparate treatment.

It is undisputed that Plaintiffs are black (and/or African American), and as such, are members of a protected class. *See generally Garmon v. AMTRAK*, 844 F.3d 307 (1st Cir. 2016).

There is sufficient evidence of adverse employment action. Both Mr. Pointer and Mr. Knight were terminated from employment. Mr. Tilahun maintains his resignation

6

was a "constructive discharge" due to the discrimination he faced.[2] (POSMF ¶ 20; PASMF ¶ 5.) In addition to his final constructive discharge, Mr. Tilahun was terminated on at least one prior occasion, and when he was rehired, it was at a lower hourly wage. (POSMF ¶ 19; PASMF ¶ 5.)

The record supports a finding that the Plaintiffs were qualified for their employment. A fact-finder could infer Mr. Knight was qualified for his position based on the fact he was asked to return to work after is medical leave and was terminated when he did not return on November 5, 2014. A fact-finder could infer Mr. Tilahun was qualified because he was terminated for dangerous driving—not for being unqualified—and subsequently was rehired. A fact-finder could infer Mr. Pointer was qualified because he was given a $2 an hour raise and was told he was no longer on probation after his first few weeks of employment.

Finally, there is record evidence to support a finding of a causal connection between Plaintiffs' race and the adverse employment action taken against them. Based on the record as a whole, a fact-finder could reasonably infer there was a causal connection from the nature and extent of Mr. Stratton and Mr. Jalbert's comments and the adverse employment actions that ensued. All of these asserted facts are viewed through the lens that applies at the summary judgment stage, where the burden of establishing a *prima facie* case is "not onerous." *Douglas*, 474 F.3d at 14.

Defendants have asserted non-discriminatory reasons for terminating each

---

[2] "Under the comparable federal act, 'discharge' includes the situation where, although not formally discharged by the employer, the employee has no reasonable alternative to resignation because of intolerable working conditions." *King v. Bangor Fed. Credit Union*, 611 A.2d 80, 82 (Me. 1992). "The test is whether a reasonable person facing such unpleasant conditions would feel compelled to resign." *Id.* "A . . . constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

Plaintiff. Mr. Pointer, allegedly was "not a good fit and was struggling to keep up[.]" (PMSJ at 9; DSMF ¶¶ 17-18, 22, 49.) Mr. Knight allegedly did not show up for work when instructed. (DSMF ¶¶ 12-14.) As for Mr. Tilahun, Defendants contend he was not terminated, but rather quit his job. (DSMF ¶¶ 24, 37.) The determination of whether these are legitimate, non-discriminatory reasons supporting termination of employment, or are mere pretext disguising a "discriminatory animus" involves fact-intensive questions of intent and motivation that are not, on the instant record, properly resolved in the context of summary judgment. In light of the Law Court's admonishment to be "particularly cautious" about granting summary judgment once a *prima facie* case of unlawful discrimination has been made, the court concludes that there is sufficient evidence in this record as a whole upon which a "reasonable fact-finder could conclude that [Defendants'] explanation for firing [Plaintiffs] was pretextual" and Plaintiffs were terminated because of their status as members of a protected class and therefore summary judgment is not appropriate. *Daniels*, 2012 ME 80, ¶ 15, 45 A.3d 722; *Flood*, 780 F.3d at 8, 10. Summary judgment will be denied with respect to Plaintiffs' disparate treatment claims.

## 2. Hostile Work Environment

To establish a claim for hostile work environment under section 1981, a plaintiff must show that the work environment "was so pervaded by racial harassment as to alter the terms and conditions of [their] employment." *Garmon*, 844 F.3d at 317 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 768 (1998)). To make a prima facie showing, a plaintiff must demonstrate that:

> (1) that [he] is a member of a protected class; (2) that [he] was subjected to unwelcome sexual [or racial] harassment; (3) that the harassment was based upon sex [or race]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually [or racially] objectionable

8

conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Douglas*, 474 F.3d at 15.

In assessing a hostile work environment claim, the court considers the totality of the circumstances, including the nature of alleged harassment, its frequency, its severity, and whether it unreasonably interferes with job performance. *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002). These considerations are typically fact-intensive. *See Flood*, 780 F.3d at 11 (pervasiveness and severity are questions of fact); *Rosario v. Dep't of Army*, 607 F.3d 241, 247 (1st Cir. 2010) ("subject to some policing at the outer bounds, it is for the jury to . . . decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment.")

Plaintiffs are members of a protected class. Individually and collectively they have asserted instances of harassment consisting of comments that were made toward them and/or in their presence in the workplace, and that were overtly racial in nature or that may objectively and/or subjectively be so perceived to be overtly racial, and that these comments were made by their employer and a supervisor. The severity and pervasiveness of the harassment asserted, as well as whether a reasonable person would find it hostile or abusive, raise disputed issues of material fact. Therefore, the motion for summary judgment as to the hostile work environment claims of all three Plaintiffs is denied.

## C. Defendant Lisa Stratton

Defendant contends that Lisa Stratton is not a proper party defendant to this employment discrimination action because she did not have an ownership interest in

T&D Timber Products and thus was not Plaintiffs' employer, and because there is no claim that she personally did or said anything that was racially hostile or inappropriate.

In response, Plaintiffs contend that Lisa Stratton shared administrative and managerial control of the business with her husband, Travis Stratton, and cite the following record references. Lisa Stratton was involved in hiring and/or firing and general personnel matters. (PSAMF ¶¶ 4, 5.) The company's website stated that T&D was "family owned," implying the Stratton family, including Ms. Stratton, had an ownership stake in the business. (PSAMF ¶ 1.) On the day Mr. Tilahun resigned, he told Ms. Stratton he was resigning because he could no longer tolerate the racial harassment, and in response she told him, "If that's what you want, you can quit." (POSMF ¶ 10; PSAMF ¶ 10.) On the day Mr. Pointer's employment was terminated, Ms. Stratton called him to the office to inform him that she was monitoring him on surveillance cameras, and she fired him. (PSAMF 16.) Ms. Stratton informed Mr. Knight of the date he was to return to work, upon which he relied and which ultimately contributed to his firing. (PSAMF, ¶¶ 24, 25.)

With respect to summary judgment, there is a genuine issue of disputed material fact as to whether or not Ms. Stratton had an ownership interest in T&D Timber Products. She appears to have played a managerial role in the business, and had a number of interactions with several if not all of the Plaintiffs. In regard to an ownership interest in the business, a partnership may be implied from the facts and circumstances "whether or not the persons intend to form a partnership." 31 M.R.S. § 1022 (2016); *see also John Nagle Co. v. Gokey*, 2002 ME 101, ¶ 5, 799 A.2d 1225. While the claim against Ms. Stratton may not withstand closer scrutiny after a full record is developed at trial,

Plaintiffs defense to the motion is sufficient for summary judgment purposes.[4]

## D. Defendant T&D Timber Products, LLC's Liability

Defendant LLC also contends that it is not a proper party to this action. All of the claims in issue arose in 2014. Defendant LLC was formed in July 2015. Plaintiffs assert in the context of this motion that the LLC is liable under successor-in-interest liability. *See Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995) (to protect employees court may import concept of successor liability if essential to avoid undercutting Congressional purpose in providing effective remedies); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 744 (7th Cir. 1985) (extending liability to successors sometimes necessary to vindicate important statutory policies).

Plaintiffs have not plead successor-in-interest liability in their complaint, nor have they generated a genuine issue of material fact regarding the LLC's formation or the motivation for its formation. *Cf. Dir. of Bur. of Labor v. Diamond Brands*, 588 A.2d 734, 736 n.5 (Me. 1991) (summary judgment in favor of successor corporation upheld where plaintiff failed to generate genuine issue of material fact regarding nature of the asset purchase). Plaintiffs cite no authority to support the notion that a limited liability corporation formed under Title 31 automatically assumes liabilities of its member for actions that occurred prior to its formation. The motion for summary judgment as to Defendant T&D Timber Products, LLC will be granted.

### III. Conclusions and Order

In accordance with the foregoing, the court concludes that there are genuine

---

[4] Plaintiffs argue alternatively that Ms. Stratton can be found liable under section 1981 without being the employer. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2nd Cir. 2000) (holding "individuals may be held liable under § 1981."). A claim seeking personal liability under section 1981 must establish the actor's personal involvement. *Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991).

issues of material fact that preclude summary judgment on Plaintiffs' claims of employment discrimination based on disparate treatment and hostile work environment. In addition, the court concludes that there remain disputed issues of material fact with respect to Defendant Lisa Stratton's liability. Plaintiffs have not plead or sufficiently supported their claim against T&D Timber Products, LLC, and the motion for summary judgment as to that entity will be granted.

Therefore, the entry shall be:

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Said motion is GRANTED with respect to Defendant T&D Timber Products, LLC and partial summary judgment shall be entered accordingly. The motion is DENIED in all other respects.

**SO ORDERED.**

DATE: April 14, 2017

Wayne R. Douglas
Justice, Maine Superior Court

CV-16-14

ATTORNEYS FOR PLAINTIFFS
ANDREW P COTTER
JAMES A CLIFFORD
CLIFFORD & CLIFFORD
62 PORTLAND RD SUITE 37
KENNEBUNK ME  04043

ATTORNEY FOR DEFENDANTS:
DAVID PERKINS
PERKINS OLSON PA
P O BOX 449
PORTLAND ME  04112