2012 ME 80

Timothy DANIELS

v.

NARRAGUAGUS BAY HEALTH CARE FACILITY et al.

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2012.
Decided: June 21, 2012.

Arthur J. Greif, Esq. (orally), and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Timothy Daniels.

Gregg R. Frame, Esq. (orally), Taylor, McCormack & Frame, LLC, Portland, for appellee Narraguagus Bay Health Care Facility.

Michael R. Poulin, Esq., and Marc N. Frenette, Esq. (orally), Skelton, Taintor & Abbott, Auburn, for appellee North Country Associates, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, MEAD, and GORMAN, JJ.

Concurrence: ALEXANDER, SILVER, and JABAR, JJ.

GORMAN, J.

[¶ 1] Timothy Daniels appeals from the Superior Court's (Washington County, *Cuddy, J.*) entry of summary judgment in favor of the defendants, Narraguagus Bay Health Care Facility and North Country Associates, Inc.[1] Daniels contends that the court erred in concluding that Narraguagus and North Country were entitled to judgment as a matter of law on his disability discrimination and retaliation claims made pursuant to the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4572(1)(A), 4633(1) (2011). We agree and vacate the judgment.[2]

## I. BACKGROUND

[¶ 2] The following facts are presented in the light most favorable to Daniels as the nonprevailing party and are supported in the summary judgment record.[3] *See Cookson v. Brewer Sch. Dep't,* 2009 ME 57, ¶ 2, 974 A.2d 276.

[¶ 3] Narraguagus Bay Health Care Facility operates a nursing home in Milbridge. North Country Associates, Inc. provides administrative support services, consultation, and advice to Narraguagus for which Narraguagus pays a monthly fee. Although the two do not share common ownership or control, North Country has, at least once, assigned one of its employees to serve as the administrator at Narraguagus.[4]

[¶ 4] Timothy Daniels began working for Narraguagus in 2007 as a maintenance assistant. Daniels's job responsibilities included tasks required to achieve regulatory compliance such as floor waxing, buffing, and stripping; carpentry, plastering, and painting; testing generators, completing fire drills, and checking and recording tap water temperatures; and removing trash, unloading incoming supplies, and keeping safety logs.

[¶ 5] Daniels suffered a work-related injury to his right shoulder in October 2007 and thereafter was given work restrictions by his physician that prevented him from performing all of the work duties he had previously handled. In January 2008, Daniels underwent surgery and then began a leave of absence. In March 2008, Daniels delivered a letter to Betty Pomeroy, a Narraguagus employee then acting as administrator, noting that he was applying for more leave at her insistence. In that letter, Daniels also reported that he had been cleared for light duty work, accused her of refusing to accommodate his

---

1. The Superior Court issued a separate judgment to resolve the claims against each defendant. For ease of reference, we refer to these two orders as a single judgment.

2. As a result, we do not reach Narraguagus's argument regarding the statutory cap on damages.

3. The parties' statements of material facts and responses span ninety pages. Maine Rule of Civil Procedure 56(h)(1) requires "separate, short, and concise" statements of material facts, causing us to question the applicability of summary judgment practice in such a fact-driven case.

4. A medical care facility other than a hospital, like Narraguagus, may operate only under the supervision of a licensed administrator. *See* 32 M.R.S. § 61 (2011). Thus, it was important for Narraguagus to always have a designated administrator.

disability, and asked for light duty work.[5] No work was afforded to Daniels as a result of that letter.

[¶ 6] Based upon his allegation that Narraguagus had refused to accommodate his work restrictions, Daniels filed a complaint with the Maine Human Rights Commission (the Commission) against Narraguagus in August 2008, which North Country became aware of in September 2008.[6] In October 2008, Daniels's treating physician released him to return to work without restrictions. In December 2008, Narraguagus rehired Daniels as a maintenance assistant because it had filled his former position as maintenance director. In February 2009, it promoted him to maintenance director after that position became available.

[¶ 7] Daniels suffered another work-related injury to his right shoulder in July 2009, and, although he did not lose any time from work as a result of that injury, he was restricted to modified duty for the next three months. During that period, Daniels was disciplined for performance issues. Early in November 2009, when Daniels no longer had any work restrictions, Narraguagus's new administrator, Kevin Hachey, gave Daniels a performance improvement plan for failing to complete some tasks at all and failing to complete other tasks on time. On November 30, 2009, in response to the complaint that he filed in August 2008, the Commission is-

sued Daniels a right-to-sue letter pursuant to 5 M.R.S. § 4612(6) (2011). Both Narraguagus and North Country were aware of the letter.

[¶ 8] On December 11, 2009, the owner of Narraguagus, Dr. Steven Weisberger, wrote an email to Rosanne Tousignant, a North Country employee, which read:

> I do think they need to ride hard on [Daniels] as I am not sure if he is doing a good job and he is a huge liability with a [bad] attitude and a lazy work [ethic] that is well known in the community. We have to be sure that we document everything with him everyday as he is going forward with that civil suit. I am sure that he hurt himself lobstering and not in the facility.[7]

Tousignant's role at Narraguagus is disputed. In his summary judgment filings, Daniels asserted that she was frequently present at Narraguagus, which North Country denied. Both cited different portions of Daniels's deposition. In any event, the parties agree that she was involved in some of the discipline at issue here. The extent of her involvement, which affects the liability of North Country, is an issue for the fact-finder.

[¶ 9] A review letter written by Hachey on December 28, 2009, again documented Daniels's job performance issues related to preventive maintenance and having to be asked more than once to complete work, as well as needing to prioritize and improve

---

5. Daniels was receiving workers' compensation benefits, but the record does not indicate whether he requested that he be allowed to return to work pursuant to 39–A M.R.S. § 218 (2011).

6. In Daniels's first Maine Human Rights Commission complaint, he named only Narraguagus. After his termination, Daniels filed a new complaint with the Commission complaining of discrimination and retaliation by both Narraguagus and North Country. At our request, Daniels provided a copy of this

second complaint to us following oral argument. The copy we received is undated. We express no view on whether or not this procedural sequence satisfies the requirements of 5 M.R.S. § 4622(1) (2011).

7. This quotation comes directly from the email, which is part of the summary judgment record. The parties' statements of material facts included an additional word that does not appear in the email.

communication and cooperation skills. On December 30, Daniels reported elbow pain to a physical therapist at Narraguagus. Narraguagus claims that he did not timely report that injury, and on January 14, 2010, Tousignant recommended to Hachey that Daniels be disciplined for failing to do so.

[¶ 10] About two weeks later, state regulators visited Narraguagus to conduct a licensing inspection. The inspection uncovered water temperature issues that not only resulted in the imposition of fines but also placed Narraguagus in jeopardy of losing its license. Narraguagus blamed Daniels for the negative inspection and terminated his employment on January 29, 2010. Daniels's termination notice referred only to this last disciplinary incident as the reason for his discharge. Tousignant and Hachey were both present at the meeting when Daniels was fired. At the time Daniels was terminated, both Hachey and Tousignant knew that Daniels had requested the right-to-sue letter from the Commission, which Tousignant interpreted to mean a lawsuit was forthcoming.

[¶ 11] After his termination, Daniels filed a two-count complaint against Narraguagus and North Country alleging disability discrimination and retaliation.[8] Narraguagus and North Country moved for summary judgment, which the Superior Court granted in their favor. Daniels filed a timely appeal.

## II. DISCUSSION

[¶ 12] Daniels alleged various MHRA claims against Narraguagus and North Country, including that they discriminated against him due to his disability and that they retaliated against him for filing a

claim with the Commission. We consider his claims against each entity and conclude that neither Narraguagus nor North Country was entitled to summary judgment.

### A. Claims Against Narraguagus

#### 1. Discrimination

[¶ 13] Daniels argues that the Superior Court erred in concluding that his disability discrimination claim failed as a matter of law. We review the grant of a summary judgment de novo and view the evidence in the light most favorable to the nonprevailing party to determine whether there are genuine issues of material fact and whether the prevailing party was entitled to judgment as a matter of law. See M.R. Civ. P. 56; *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 8, 28 A.3d 1158.

[¶ 14] We follow a three-step, burden-shifting analysis to evaluate employment discrimination claims at the summary judgment stage. See *Cookson*, 2009 ME 57, ¶ 14, 974 A.2d 276; *Whitney v. Wal–Mart Stores, Inc.*, 2006 ME 37, ¶ 9, 895 A.2d 309, *superseded by statute on other grounds by* P.L. 2007, ch. 385, § 3. Pursuant to this analysis, an employee must first establish a prima facie case that (1) he has a disability; (2) he is otherwise qualified, with or without reasonable accommodations, to perform the essential functions of his job; and (3) his employer adversely treated him based in whole or in part on his disability. See *Whitney*, 2006 ME 37, ¶ 9, 895 A.2d 309.

[¶ 15] If the employee establishes prima facie evidence of these three elements, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory basis for its action. *Doyle v. Dep't of Human Servs.*,

8. Daniels's claim, at its essence, is that his employer mistreated him after he was injured at work. There was, however, no discussion of the workers' compensation system within the parties' briefs and trial court filings.

2003 ME 61, ¶ 15, 824 A.2d 48. If the employer does so, the employee can survive a motion for summary judgment by presenting sufficient evidence from which a fact-finder could determine "that either (1) the circumstances underlying the employer's articulated reason are untrue, or (2) even if true, those circumstances were not the actual cause of the employment decision." *Cookson*, 2009 ME 57, ¶ 16, 974 A.2d 276. We are mindful that discrimination claims in general are often difficult to assess at the summary judgment stage, and particularly that "the issue of whether an employee has generated an issue of fact regarding an employer's motivation or intent is one heavily dependent on the individual facts before the court." *Id.* ¶ 21.

[¶ 16] The Superior Court correctly placed the burden on Daniels to demonstrate prima facie evidence of his disability, his ability to perform his job, and an adverse action by his employer. It erred, however, when it concluded: "There are no facts to establish the essential functions of plaintiff's job." In fact, the parties' summary judgment filings agree that Daniels's job responsibilities included tasks required to achieve regulatory compliance and provided examples of those tasks. The descriptions of Daniels's work duties are sufficient to satisfy the second element of his prima facie case. Whether some or all of these responsibilities were essential, and whether Daniels can actually perform them, as he claims, are questions for a fact-finder. *See Pinkham v. Rite Aid of Me., Inc.*, 2006 ME 9, ¶ 11, 889 A.2d 1009.

[¶ 17] The motion court further concluded that the summary judgment record did not establish the third element of Daniels's prima facie case—causation. This conclusion was in error. Although there is conflicting evidence on this issue, there is some evidence of animus based on Daniels's disability that could permit a fact-finder to conclude that Daniels was fired for discriminatory reasons. This sort of factual dispute must be resolved through fact-finding, even if Daniels's likelihood of success is small. *See Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

[¶ 18] The motion court did not address the second and third prongs of the burden-shifting analysis, presumably because it concluded that Daniels had not established his prima facie case. The undisputed facts do include a series of disciplinary actions against Daniels that could satisfy the employer's prong of the analysis. Daniels alleges that the discipline was simply a pretext, however, pointing to the email from Dr. Weisberger, the fact that he was rehired twice during his total employment, and deposition testimony presenting disputed facts.

[¶ 19] The summary judgment filings indicate that Daniels has generated prima facie evidence that (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the maintenance position, with or without reasonable accommodations; and (3) Narraguagus discharged him. The summary judgment filings also indicate, however, that there is evidence that could lead fact-finders in two different directions when considering whether Narraguagus's discharge of Daniels was or was not due to factors related to his claimed disability. In addition, there are issues of material fact concerning all aspects of Daniels's claim including, as mentioned above, whether or when Daniels was able to perform the core functions of his job. Therefore, summary judgment is not available to Narraguagus on Daniels's discrimination claim.

2. Retaliation

[¶ 20] Daniels also argues that the Superior Court failed to address his retali-

ation claim against Narraguagus. The Superior Court did address the claim, but in concluding that Narraguagus could not be liable to Daniels for retaliation, the court may have conflated the causation analysis of Daniels's discrimination claim with causation in the retaliation context.

[¶ 21] To establish a prima facie retaliation claim, Daniels must demonstrate that he engaged in a statutorily protected activity, that Narraguagus made an employment decision that adversely affected him, and that there was a causal link between the two. *See Doyle*, 2003 ME 61, ¶ 20, 824 A.2d 48. Temporal proximity of an employer's awareness of protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case. *See Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 33, 969 A.2d 897; *Doyle*, 2003 ME 61, ¶ 20, 824 A.2d 48. Although Narraguagus argues that the protected activity and discharge are too far removed from each other to give rise to an inference of causation, only two months passed between the Commission's issuance of a right-to-sue letter, which is the protected activity against which Daniels alleges Narraguagus retaliated, and his discharge.

[¶ 22] Even though the Superior Court concluded that Daniels had not demonstrated that disability discrimination was the cause of his discharge, retaliation is a separate claim that does not require there to have been underlying discrimination. In the discrimination context, causation links *disability status* to discharge, whereas in the retaliation context, causation links *protected activity* to discharge. Therefore, the Superior Court's analysis as to causation in the discrimination context

was not applicable to Daniels's retaliation claim. Even if one party's version of events appears more credible and persuasive to the court, the competing inferences that could be drawn from the temporal proximity of the Commission's right-to-sue letter and Daniels's termination, along with Dr. Weisberger's email, create a triable issue precluding summary judgment. *See Watt*, 2009 ME 47, ¶ 35, 969 A.2d 897. As a result, we vacate the summary judgment entered in favor of Narraguagus on Daniels's retaliation claim.

**B.   Claims Against North Country**

**1.   Discrimination**

[¶ 23] The motion court granted summary judgment for North Country on the discrimination claim because it concluded that North Country was not Daniels's employer and thus could not be held liable for discrimination. We review this conclusion de novo to determine whether there are genuine issues of material fact precluding summary judgment. *Gabay*, 2011 ME 101, ¶ 8, 28 A.3d 1158.

[¶ 24] Daniels advances two theories of liability against North Country, first, that it can be liable because it is part of an integrated enterprise with Narraguagus, and second, that it acted in Narraguagus's interest in discriminating against him. The second argument focuses on the statutory language of the MHRA, which defines "employer" as including "any person acting in the interest of any employer, directly or indirectly." 5 M.R.S. § 4553(4) (2011).

[¶ 25] We have not yet decided whether to adopt the integrated enterprise theory,[9] *see Batchelder v. Realty Res. Hospi-*

9.   Contrary to Daniels's argument, the existence of an integrated enterprise is not a jury question *per se*. The authority he cites merely

concluded that a factual dispute precluded summary judgment in a specific case. *See*

*tality, LLC,* 2007 ME 17, ¶ 11, 914 A.2d 1116, and Daniels's reading of section 4553(4) is novel. We need not accept or reject either of Daniels's theories at this early stage of the proceedings, however, because there are multiple issues of disputed fact regarding North Country's involvement in the actions that he claims constituted discrimination and retaliation.

[¶ 26] Those issues of disputed fact must be resolved before any court can attempt to determine whether Narraguagus and North Country could be found to be an integrated enterprise, if such a cause of action were found to exist, or whether North Country is liable for discrimination because it acted in the interest of Narraguagus in discriminating against Daniels. For these reasons, we must remand the discrimination claim against North Country for the trial court to consider in the first instance.

### 2. Retaliation

[¶ 27] Finally, Daniels argues that the motion court erred in concluding that North Country could not be held liable for retaliation. The motion court concluded that any person, including a non-employer, may be liable for a retaliation claim. *See* 5 M.R.S. § 4633(1) (2011) (stating that "[a] *person* " may not retaliate against an individual because the individual asserted rights that the MHRA protects (emphasis added)); 5 M.R.S. § 4553(7) (2011) (defining "person" to include corporations). Again, we decline to adopt the legal theories advanced in this case before adjudication of the underlying facts.[10] Daniels argues that the motion court erred in concluding that he had presented no facts allowing a reasonable inference that North Country, assuming it participated in the decision to discharge him, did so because of his complaint to the Commission. For the same reasons that apply to Narraguagus, we agree, which requires us to vacate the Superior Court's judgment in favor of North Country on both Daniels's discrimination and retaliation claims.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

SILVER, J., with whom ALEXANDER and JABAR, JJ., join, concurring.

[¶ 28] First, I commend the Court's forward-thinking opinion because it reiterates that determining credibility and weighing evidence has no place in summary judgment practice. The burden-shifting analysis deals only with burdens of production, not of persuasion. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (stating that "the determination that a defendant has met its burden of production . . . can involve no credibility assessment" because "the burden-of-production determination necessarily *precedes* the credibility-assessment stage"); *id.* at 524, 113 S.Ct.

---

*Phair v. New Page Corp.,* 708 F.Supp.2d 57, 69 (D.Me.2010).

10. The parties' summary judgment filings presented the facts as heavily contested. On a variety of points, both parties extensively objected to or denied the factual assertions of the other. Although parties are free to conduct themselves in any way supported by the record and rules of procedure, trial courts are more likely to be able to decide portions of cases on summary judgment when the parties dispute fewer of the facts. As our recent amendments to M.R. Civ. P. 56(d) make clear, "a fact admitted or not opposed by any party solely for purposes of summary judgment is not deemed admitted for any other purpose if the motion for summary judgment is denied." M.R. Civ. P. 56 Advisory Committee's Note to 2012 amend.

2742 (stating that whether the employer's proffered reason for the adverse treatment is unpersuasive is a question for the fact-finder). At the summary judgment stage, the court cannot decide which party has presented stronger evidence when competing plausible inferences can be drawn from the facts. *See F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. This is especially true with issues of motive or intent that are present in employment discrimination cases.

[¶ 29] I write separately because it is time to simplify the summary judgment process and eliminate any burden-shifting analysis. As has been discussed thoroughly in the United States Court of Appeals for the Tenth Circuit and the United States District Court for the Southern District of New York, the continued vitality of the burden-shifting analysis is questionable. *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1221–28 (10th Cir.2003) (Hartz, J., concurring); *accord, e.g., Peterson v. City College*, 32 F.Supp.2d 675, 683–84 (S.D.N.Y.1999); Denny Chin & Jodi Golinsky, *Moving Beyond McDonnell Douglas: A Simplified Method for Assessing Evidence in Discrimination Cases*, 64 Brook. L.Rev. 659 (1998). I agree that the analysis is outdated, confusing, and unworkable. At this point, it confuses rather than clarifies the ultimate issue in employment discrimination cases: whether there is evidence of discrimination.

[¶ 30] The analysis adds a layer to the court's already difficult task in deciding a motion for summary judgment on a discrimination claim. This analysis originated in the United States Supreme Court with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in which the Court applied the analysis to a claim of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 in the context of a

trial. We then adopted the *McDonnell* analysis for discrimination claims pursuant to the Maine Human Rights Act in *Maine Human Rights Commission v. City of Auburn*, 408 A.2d 1253, 1261–62 (Me.1979). In that case, we expressly noted that although federal case law applies *McDonnell* during a trial, it should be used after a trial when the court is assessing the record as a whole. *Id.* at 1262 n. 13.

[¶ 31] We first extended the analysis to the summary judgment stage in *Doyle v. Department of Human Services*, 2003 ME 61, ¶¶ 14–15, 824 A.2d 48. Although in Maine we had only applied the analysis at or after trial, we made reference in *Doyle* to the federal system, *see id.*, which has historically applied *McDonnell* at the summary judgment stage, *see, e.g., Cartagena v. Sec'y of Navy*, 618 F.2d 130, 132–33 (1st Cir.1980). Following *Doyle* we have continued to apply the analysis at the summary judgment stage. *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, 974 A.2d 276; *Currie v. Indus. Sec., Inc.*, 2007 ME 12, 915 A.2d 400; *LePage v. Bath Iron Works Corp.*, 2006 ME 130, 909 A.2d 629 (applying the analysis in the context of a claim pursuant to the Maine Whistleblowers Protection Act); *Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, 864 A.2d 169 (same). We have also fastidiously applied the mandates of M.R. Civ. P. 56, *e.g., Doyle*, 2003 ME 61, ¶¶ 10–13, 824 A.2d 48, while at the same time recognizing the difficulty inherent in deciding these claims at the summary judgment stage, *see Cookson*, 2009 ME 57, ¶ 21, 974 A.2d 276. It is this precedent that compelled the Superior Court to apply the analysis to Daniels's claims at the summary judgment stage and that, in turn, requires us to review the judgment in this framework.

[¶ 32] What our precedent has failed to recognize is that the *McDonnell* analysis is a *"procedural* device, designed only to es-

tablish an order of proof and production." *Hicks*, 509 U.S. at 521, 113 S.Ct. 2742 (quotation marks omitted). It is framed as three distinct steps in order to help the court conceptually organize the evidence before presenting the ultimate question of discrimination to the jury. *See Hicks*, 509 U.S. at 507–08, 517–18, 113 S.Ct. 2742 (stating that after the defendant meets his burden of production, the plaintiff "has the full and fair opportunity to demonstrate, through presentation of his own case and through cross-examination of the defendant's witnesses, that the proffered reason was not the true reason for the employment decision" (quotation marks omitted)); *Auburn*, 408 A.2d at 1261 ("The special rules developed by the federal courts provide a sensible, orderly way to evaluate the evidence ... as it bears on the critical question of discrimination." (quotation marks omitted)). Its purpose is to determine whether there is causation between the employee's disability and the employer's adverse action. This is the third element of a discrimination claim.

[¶ 33] The analysis is intricate because claims involving motive and pretext are complex, nuanced, and often difficult for the fact-finder to parse out. However, it is meant to simplify rather than complicate matters for trial; it "was never intended to be rigid, mechanized, or ritualistic." *Hicks*, 509 U.S. at 519, 113 S.Ct. 2742 (quotation marks omitted). Accordingly, in discrimination cases "trial courts or reviewing courts" should not make the already "sensitive and difficult" inquiry into the employer's mental process "more difficult by applying legal rules which were devised to govern the basic allocation of burdens and order of presentation of proof in deciding this ultimate question." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (citation omitted) (quotation marks omitted).

[¶ 34] At the summary judgment stage in employment discrimination cases, the *McDonnell* analysis unnecessarily complicates what should be a straightforward and objective inquiry pursuant to Rule 56. Rule 56 provides that summary judgment can only be granted to a defendant when (1) there are no genuine disputes of material fact, and (2) the undisputed evidence fails to establish a prima facie cause of action, such that no reasonable view of the evidence would permit a fact-finder to find in favor of the nonmoving party. *See* M.R. Civ. P. 56(c); *Bonin v. Crepeau*, 2005 ME 59, ¶ 18, 873 A.2d 346 ("To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." (quotation marks omitted)). In these cases, the court's purview on a motion for summary judgment is limited to the prima facie case pursuant to Rule 56.

[¶ 35] To the extent that the *McDonnell* analysis functions as an overlay on our · standard summary judgment practice, steadfastly proceeding through its three steps is unnecessary and unworkable at the summary judgment stage. It breaks down what is in reality the third element of an employment discrimination claim into its own three-prong showing that volleys the burden of production between the two parties. At this stage it does nothing more than organize the record to determine whether the plaintiff has offered evidence of causation between the employer's adverse action and the employee's disability, and whether the defendant has offered evidence to put that issue into dispute. It is not necessary to use the *McDonnell* analysis to make these determinations. All the court needs to do—and all that it can do pursuant to Rule 56—is assess the record to determine if there are genuine issues of material fact or if the undisputed

facts entitle one party to judgment as a matter of law.

[¶ 36] Therefore, I would not apply the *McDonnell* analysis to discrimination claims at the summary judgment stage. On a motion for summary judgment, I would limit the inquiry in these cases to that which is provided for by Rule 56: whether there are genuine disputes of material fact, and whether the undisputed material facts establish a prima facie cause of action. These are the only questions for the court at the summary judgment stage.

[¶ 37] Here, a prima facie case for employment discrimination requires Daniels to offer evidence that he has a disability, that he can perform the essential functions of his job, and that he was treated adversely because of his disability. *See Whitney v. Wal–Mart Stores, Inc.*, 2006 ME 37, ¶ 9, 895 A.2d 309, *superseded by statute on other grounds by* P.L. 2007, ch. 385, § 3; *see also Auburn*, 408 A.2d at 1262 ("If the judge finds proof of certain circumstances that the law treats as sufficient to support an inference of unlawful discrimination, then a prima facie case for the plaintiff is made out...."). As the majority recognizes, it is inherently difficult to assess discrimination claims at the summary judgment stage because the third element of the claim requires the court to delve into the employer's motive or intent. *See Cookson*, 2009 ME 57, ¶ 21, 974 A.2d 276. Issues of motive and intent are often decided on circumstantial evidence that requires the court to make inferences from the facts and to choose between competing inferences generated by the facts. *See, e.g., State v. Pinkham–Murch*, 432 A.2d 1297, 1300 (Me.1981).

[¶ 38] When analyzed as Rule 56 requires, this record is rife with genuine disputes of material fact regarding the second and third elements of Daniels's claim for employment discrimination, which bear on the ultimate issue of whether Daniels has been discriminated against. I would vacate the summary judgment against him on that basis alone, as summary judgment practice requires, without evaluating the strength of the evidence that each party has offered to prove or disprove the third element.