STATE OF MAINE                                 SUPERIOR COURT
YORK, SS.                                      CIVIL ACTION
                                               DOCKET NO. CV-12-064
DONNA ROTHAUS                    )             JON-YOR- 6/0 2013
                                 )
           Plaintiff,            )
      v.                         )             ORDER
                                 )
H.D. GOODALL HOSPITAL,           )
                                 )
           Defendant.            )


I.     Facts

       Plaintiff, Donna Rothaus, R.N., was hired to work for Defendant, H.D. Goodall

Hospital ("Goodall"), in December 2009. (DSMAF ¶¶ 1-2). Plaintiff contends that she

gave notice at her interview to the Nurse Manager, Laurie Ferris, that she had Grave's

Disease. (Rothaus Dep. at 26-27). Plaintiff contends that she agreed to work the night

shift, but asked whether she could transfer to the day shift and Ms. Ferris assured her that

changes happen all of the time. (Pl. Dep. at 27, 131).

       In October 2010, Plaintiff complained to Ms. Ferris that there was excessive cell

phone usage by some of the nurses and that she was shown a picture of a tattooed penis

on one nurse's cell phone. (DSMAF ¶¶ 3-5). Plaintiff also expressed concern over one

coworker playing computer games during large portions of his shift. (DSMAF ¶ 6).

Plaintiff contends that she expressed her concern that the cell phone usage was negatively

impacting the nurses' patient care. (Pl.'s Resp. DSMF ¶ 5). Ms. Ferris informed Plaintiff

that she would look into her complaint. (DSMF ¶ 10). Plaintiff "got the feeling" that Ms.

Ferris was annoyed. *Id.* Defendant alleges that Ms. Ferris recirculated Goodall's cell

                                         1

phone policy in response to Plaintiff's complaint. (DSMF ¶ 11). Plaintiff contends that the recirculation did not occur. (Pl.'s Resp. DSMF ¶ 11).

Plaintiff also contends that three or four months into her employment and again, several months after that, Plaintiff asked Ms. Ferris if she could transfer from the night shift to the day shift because she had fatigue and insomnia. (DSMF ¶ 69). Parties disagree as to whether Plaintiff gave Defendant notice that her request was connected to her Grave's disease.

It is the policy of Goodall Hospital that nurses check in with their assigned patients and enter documentation into the computerized medical record system. (Pl.'s Resp. DSMF ¶ 13; DSMF ¶¶ 13, 14). On November 19, 2010, Ms. Ferris was investigating an event report and found that Plaintiff had failed to document an injury in the patient's medical record. (DSMF ¶ 15). Ms. Ferris further reviewed the patient's record and found that Plaintiff did not enter any documentation after her initial assessment. (DSMF ¶ 16). Ms. Ferris sent Plaintiff an email expressing her concern about Plaintiff's documentation. (DSMF ¶ 17). Ms. Ferris than audited Plaintiff's documentation from November 15 and 22, 2010. Ms. Ferris found that Plaintiff had failed to make any documentation after the initial assessment for four of the five patients on November 15, and had left large gaps in documentation on November 22. (DSMF ¶¶ 19, 20).

The Executive Director of Nursing, Barbara Deveau, and Ms. Ferris, met with Plaintiff on November 24, 2010 to discuss her documentation. (DSMF ¶ 21). They told Plaintiff of the gaps in documentation and that if her documentation did not improve her employment would be terminated. (DSMF ¶¶ 22, 24). They also informed her that she

2

was receiving a written warning. (DSMF ¶ 28). At this time, Plaintiff contends that she raised the issues of her coworkers' cell phone usage and switching to an earlier shift because of her Grave's Disease. (Pl.'s Resp. DSMF ¶ 27).

On December 23, 2010, Director of Human Resources, Nancy Burgess, received a letter from Plaintiff's medical provider, Nancy Marshall. (DSMF ¶ 80). The letter stated that Ms. Marshall was "concerned about [Plaintiff's] multiple health issues since starting her third shift position, including disabling fatigue, insomnia, weight loss, and chronic viral infections," and that it would be in Plaintiff's "best interest to make a change in her work hours." (DSMF ¶ 81). Ms. Burgess responded by sending Ms. Marshall an email with an attached document entitled "ADA Provider Request for Information," and asked Ms. Marshall to fill it out as soon as possible. (DSMF ¶ 84). The document was a request for information regarding the nature of the impairment, whether and how it affected Plaintiff's life, the severity and expected duration of the impairment and the limitations the impairment imposed on Plaintiff's job performance. (DSMF ¶ 85). Ms. Marshall never responded to this request for additional information. (DSMF ¶ 86).

There is a dispute as to whether Ms. Ferris continued to monitor Plaintiff's documentation after the November 24th meeting. Defendant contends that Ms. Ferris continued to monitor Plaintiff's records and found a number of long gaps between the entry of records and a number of instances in which the information Ms. Rothaus documented on her assigned patients' Medication Administration Records did not match the medication physically removed from the medication cart. (DSMF ¶¶ 31, 32). Defendant cites to instances on December 9 and December 25, 2010. (DSMF ¶¶ 33-38). Plaintiff contends that she asked Ms. Ferris for feedback on her documentation a week

3

after the November 24th meeting, at which point Ms. Ferris told her that she had not had a chance to review Plaintiff's documentation. Plaintiff alleges she asked again two weeks after that, at which point Ms. Ferris stated that her documentation had improved. (Pl.'s Resp. DSMF ¶ 30). Plaintiff denies any documentation problems after November 24, 2010.

On January 1, 2011, one of Plaintiff's patients "coded" (required resuscitation). (DSMF ¶ 47). Defendant contends that Kate Bolduc and Kristie Harrison came to Ms. Ferris to discuss concerns they had over Plaintiff's performance at the code. (Ferris Aff. ¶ 13). Defendant contends that Ms. Ferris pulled Plaintiff's records of the code as a result of the reports by Ms. Bolduc and Nurse Harrison and found that the documentation was scant, listing incorrect dates and times and inaccurate information on the code and patients' vital signs. *Id.* Defendant alleges that Ms. Ferris, Ms. Deveau, and the Director of Human Resources agreed that termination of employment was appropriate on this basis. (Ferris Aff. ¶ 15; Burgess Aff. ¶ 15; Deveau Aff. ¶ 3). Plaintiff contends that she was commended on her good work at the code occurrence by Ms. Bolduc and that Ms. Bolduc had specifically told Plaintiff to only document the initial assessment, which is why the documentation appears scant. (Wakefield Dep. 26, ex. 1). Plaintiff denies that she inaccurately documented the code occurrence. (Rothaus dep. 84-87). Plaintiff denies that termination of employment was appropriate. (Pl.'s Resp. DSMF ¶ 55).

On January 7, 2011, Ms. Ferris and Ms. Deveau met with Plaintiff and explained that they were terminating her employment. (DSMF ¶ 58). Defendant claims Plaintiff was told her employment was being terminated for her persistent failure to enter complete, timely and accurate patient records. (Ferris Aff. ¶ 17). Plaintiff claims she was

4

told her employment was being terminated because of her performance at code. (Rothaus dep. 98:1-9). Defendant sent Plaintiff a letter regarding her termination from employment and a letter to the Nursing Board reporting the reasons for the termination. (DSMF ¶¶ 63, 64).

Plaintiff has brought this action for Whistle Blower Discrimination, Disability Discrimination and Retaliation in Violation of the MHRA against Defendant. Defendant now moves for Summary Judgment.

II.    Standard

When a defendant moves for summary judgment, "the plaintiff must establish a prima facie case for each element of [the] cause of action that is properly challenged in the defendant's motion." *Flaherty v. Muther*, 2011 ME 32, ¶38, 171 A.3d 640, 652-653. The burden then shifts to the defendant to show that there is no genuine issue of material fact. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Beal v. Allstate Ins. Co.*, 989 A. 2d 733, 738 (Me. 2010); *Dyer v. Department of Transportation*, 951 A.2d 821, 825 (Me. 2008). When reviewing a motion for summary judgment, the Court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. *Id.*

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. *Reliance National Indemnity v. Knowles Industrial Services Corp.*, 2005 ME 29, ¶7, 868 A.2d 220, 224, citing *Univ. of Me. Found. V. Fleet Bank of Me.*, 2003 ME 20, ¶20, 817 A.2d 871, 877. Furthermore, "a fact is material if it could potentially affect the outcome of the case." *Id.*

5

The Court applies a three-part burden shifting analysis to evaluate employment discrimination claims at the summary judgment stage. "[T]o determine whether (1) the employee has presented prima facie evidence of discrimination; (2) the employer has presented prima facie evidence of a legitimate, non-discriminatory reason for the adverse action; and, in response, (3) the employee has presented *prima facie* evidence that the employer's proffered reason is pretextual or untrue." *Fuhrmann v. Staples the Office Superstore East, Inc.,* 2012 ME 135, ¶13, 58 A.3d 1083, citing *Daniels v. Narraguagus Bay Health Care Facility,* 2012 ME 80, ¶¶ 14-1, 45 A.3d 722. Plaintiff has the burden of production, not persuasion.

III.    Discussion

   *a.   Whistle Blower Claim*

In order to show a valid claim for Whistleblower Discrimination under the Whistleblower Protection Act (WPA), Plaintiff must show "(1) that [the employee] engaged in activity protected by the WPA, (2) that [the employee] experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action." *DiCentes v. Michaud,* 1998 ME 227, ¶ 14, 719 A.2d 509.

The Court finds that Plaintiff whether Plaintiff engaged in a protected activity when she reported the cell phone usage of other nurses in October 2010 is a genuine question of material fact. An employee engages in a protected activity when:

> The employee, acting in good faith, or a person acting on behalf of the employee, reports to the employer or a public body, orally or in writing, what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual.

6

26 M.R.S. § 833(1)(B). Plaintiff contends that she reported concerns about the care and safety of patients as a result of nurses' cell phone usage. Defendant denies that Plaintiff reported concerns about the care and safety of the patients. There is a genuine issue of material fact of the nature of the report and whether it comports to the standards of a protected activity under the Whistleblower Protection Act.

A plaintiff may survive summary judgment on the issue of causation if the plaintiff can make a showing from which a jury could conclude that either "(1) the circumstances underlying the employer's articulated reason are untrue, or (2) even if true, those circumstances were not the actual cause of the employment decision." *Cookson v. Brewer Sch. Dep't*, 2009 ME 57 ¶16; See *Stanley v. Hancock County Comm'rs*, 2004 ME 157, P 23, 864 A.2d 169, 177. In order to meet this burden, a plaintiff needs to point out "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and . . . infer that the employer did not act for the asserted non-discriminatory reasons." *Cookson*, 2009 ME 57, ¶17 (quotation marks omitted). A plaintiff must show that the reasons given are "pretextual" and "that there was, in fact, a causal connection between the protected activity and the adverse employment action." *Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, ¶ 12, 864 A.2d 169 (quoting *DiCentes*, 1998 ME 227, ¶ 16, 719 A.2d 509).

Plaintiff asserts that she was fired as a result of her report of excessive cell phone usage by other nurses. The Law Court has held that proximity in time between the report and adverse employment action is sufficient to show a connection for the purposes of retaliation claims. *Daniels*, 2012 ME 80, ¶ 21; *Fuhrmann* 2012 ME 135, ¶ 16. In the

7

current case, Plaintiff's initial report occurred in October 2010. Plaintiff alleges that she brought the cell phone usage to the attention of her supervisor again on November 24, 2010. Plaintiff was fired on January 7, 2011. Plaintiff's employment was terminated within two months of her second report of the cell phone usage. This raises a genuine issue of material fact as to whether Plaintiff's employment was terminated because of her report of the excessive cell phone usage by other nurses at Goodall.

Defendant asserts that the true reason Plaintiff's employment was terminated was because of her persistent failure to enter complete, timely, and accurate documentation in patient's medical records. Plaintiff raises a genuine question of material fact as to whether Defendant's stated reason for Plaintiff's termination from employment was pretextual. Plaintiff contends that at the time of the firing, Plaintiff was informed that she was being fired for her performance at code. Plaintiff argues that this reason is pretextual because she was told that she performed well at the code by her supervisor Ms. Bolduc. Defendant also cites to Plaintiff's past documentation issues and the documentation of the code occurrence as reasons for termination of Plaintiff's employment. Plaintiff argues that her documentation was not the true reason for her firing. Plaintiff was spoken to once about her documentation issues. Plaintiff contends that on the day of the code occurrence Ms. Bolduc told her to only document the initial evaluation at the beginning of her shift for the patient who experienced the code. Finally, Plaintiff contends that Ms. Ferris had told her that her documentation had improved since the November 24th meeting. Viewing the evidence in the light most favorable to the non-moving party, the Court finds a genuine issue of material fact concerning whether the Defendant's stated reason for

8

terminating Plaintiff's employment was pretextual. Summary Judgment is inappropriate at this time.

### b. *Disability Discrimination*

Plaintiff claims Goodall failed to make reasonable accommodations to her disability after she made requests and therefore discriminated against her pursuant to the Maine Human Rights Act (MHRA). 5 M.R.S. § 4572 (2012); C.M.R. 94 348 3.08(D)(1)[1]. In order to beat a motion for summary judgment, "an employee must first establish a prima facie case that (1) [s]he has a disability; (2) [s]he is otherwise qualified, with or without reasonable accommodations, to perform the essential functions of his job; and (3) [her] employer adversely treated [her] based in whole or in part on [her] disability." *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 14, 45 A.3d 722, citing *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, P 9, 895 A.2d 309.

The Court does not have to reach the second or third parts of the three-part, burden-shifting test because Plaintiff has not provided a *prima facie* showing that Defendant adversely treated Plaintiff based in whole or in part on her disability. Plaintiff has presented evidence creating a question of fact concerning whether Plaintiff has a disability, and whether Plaintiff is otherwise qualified for her job. However, Plaintiff has not presented evidence that the reason her request for the accommodation of switching shifts was denied was due to Plaintiff's disability. Plaintiff asserts that she informed her employer of her Grave's Disease and her need to switch to an earlier shift in her interview and again within the first few months of her employment. Plaintiff's medical

---

[1] "It is an unlawful employment practice for an employer to fail or refuse to make reasonable accommodations to the physical or mental limitations of otherwise qualified employees or applicants for employment, unless the employer can demonstrate that a reasonable accommodation does not exist or that an accommodation would impose an undue hardship on the conduct of the employer's business." C.M.R. 94 348 3.08(D)(1).

provider also sent a letter requesting an accommodation for health reasons. However, when Defendant sent Plaintiff's medical provider a form to fill out she failed to fill it out and return it. Plaintiff did not provide Defendant with the necessary information concerning her disability and how her disability could be reasonably accommodated. Without this information, Defendant was not was not obligated to accommodate Plaintiff in the manner requested. An employer is required by law to provide reasonable accommodation where the employee has shown the employer proof of the disability and that a reasonable accommodation can be granted without undue burden to the employer. 5 M.R.S. § 4572 (2012); C.M.R. 94 348 3.08(D)(1)(2008). An employer is not required to grant accommodation where the employee has not offered proof of the disability or information on the needed accommodation. Defendant is entitled to judgment as a matter of law on this claim.

### c. *Retaliation in Violation of MHRA*

Plaintiff claims that her firing was retaliation for her request for accommodation of her disability in violation of the Maine Human Rights Act. 5 M.R.S. § 4572 (2012). In order to defeat a motion for summary judgment a plaintiff must first make a *prima facie* showing that she requested a reasonable accommodation, that there was an adverse employment activity, and that there is a causal connection between the request and the adverse employment activity.

Plaintiff has made a *prima facie* showing. Plaintiff claims that she gave Defendant notice of her disability at her interview, and again within her first few months of employment. Plaintiff alleges that she requested to be placed on an earlier shift on both of those occasions. Plaintiff's health care provider, Nancy Marshall, sent a letter received on

10

December 23, 2010, stating Plaintiff's ailments and that they would be alleviated by being scheduled on an earlier shift. Plaintiff's employment was terminated on January 7, 2011, fifteen days after Defendant received the letter from Plaintiff's healthcare provider. Similar to Plaintiff's whistle blower claim, the proximity in time of Plaintiff's request for the accommodation of an earlier shift to the termination of Plaintiff's employment is sufficient for a showing of causation for the purposes of summary judgment. *Daniels*, 2012 ME 80, ¶ 21; *Fuhrmann*, 2012 ME 135, ¶ 16.

Defendant's given reasons for firing Plaintiff are Plaintiff's performance at the code occurrence and her documentation issues. Defendant has offered evidence of the November 24th meeting between Plaintiff, Ms. Ferris and Ms. Deveau. Nonetheless, Plaintiff has raised sufficient doubt concerning the true reason for Plaintiff's firing. Plaintiff was fired just over two weeks after her medical provider sent a letter suggesting that Plaintiff be switched to an earlier shift for health reasons. Plaintiff has offered evidence of a conflicting version of what occurred at the code occurrence and denies documentation problems after the November 24th meeting, casting doubt on Defendant's given reasons. Viewing the evidence in the light most favorable to the non-moving party, Plaintiff has raised a genuine issue of material concerning whether Defendant's given reason for firing Plaintiff was pretextual. Summary Judgment is not appropriate at this time.

IV.    Conclusion

Defendant's Motion for Summary Judgment is GRANTED as to Plaintiff's claim for Disability Discrimination. Defendant's Motion for Summary Judgment is DENIED as

11

to Plaintiff's claims of Whistleblower Retaliation and Retaliation in Violation of the

MHRA.


Date: 5/9/13

_____
John O'Neil, Jr.
Justice, Superior Court


ATTORNEY FOR PLAINTIFF:
GUY D LORANGER
LAW OFFICE OF GUY D LORANGER
ONE GRANNY SMITH COURT SUITE 3
OLD ORCHARD BEACH ME    04064


ATTORNEYS FOR DEFENDANT:
KATHARINE I RAND
JAMES R ERWIN
PIERCE ATWOOD
MERRILLS WHARF
254 COMMERCIAL STREET
PORTLAND ME    04101