STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-17-0272

BRIAN SMITH,                )
                          )
        Plaintiff,       )
                          )       MEMORANDUM OF DECISION &
v.                         )       ORDER DENYING MOTION FOR
                          )       SUMMARY JUDGMENT
CITY OF SANFORD,      )
                          )
        Defendant.     )

Plaintiff Brian Smith filed this action against Defendant City of Sanford claiming that he was terminated from his position as a fire captain in the Sanford Fire Department in violation of the Maine Human Rights Act. Defendant has moved for summary judgment. For the reasons set out below, the motion is denied.

## I. Summary Judgment Factual Record[1]

Smith was employed by the Sanford Fire Department from 1982 until 2015. (DSMF ¶ 22.) He held the position of fire captain from June of 1993 until 2015, when he was terminated. (DSMF ¶ 23.)

A fire captain is required to perform the duties of a line firefighter, including extinguishing fires, administering medical treatment, and attending to whatever other needs arise. (DSMF ¶¶ 5, 8; Pl.'s Resp. to DSMF ¶ 5.) Thus, a fire captain is expected to be able to perform strenuous physical work under dangerous conditions. (DSMF ¶ 6; Pl.'s Resp. to DSMF ¶ 6.) Such work can include lifting, carrying and/or using various pieces of equipment (weighing between thirty-three and forty-six pounds each), (DSMF ¶¶ 13-14, 17), and lifting and carrying lengths of four-inch hose (weighing eighty-

---

[1] Defendant's motion to strike the affidavit of Erik M. P. Black, Esq., is denied. M.R. Civ. P. 56(i). The court, however, does not rely on facts supported solely by the Black affidavit in ruling on the instant motion.

1

seven pounds) and ladders (weighing sixty-eight pounds)—work Smith was never personally required to perform without the assistance of at least one other firefighter. (DSMF ¶¶ 15-16; Pl.'s Resp. to DSMF ¶¶ 15-16.) Firefighters are also required to wear equipment weighing up to eighty-two pounds. (DSMF ¶¶ 11-12, 18; Pl.'s Resp. to DSMF ¶ 11-12, 18.)

According to Smith, however, ninety percent of his job as fire captain was spent at the firehouse where he worked at a desk and performed administrative tasks. (PSAMF ¶ 169.) On the scene of a fire, Smith's role as fire captain was to administer the scene; assist senior officers who arrived on the scene; and perform fire investigations, which involved talking to witnesses and gathering information. (PSAMF ¶¶ 170-171, 173.) Although firefighters on scene may be required to assist with removing victims from a fire, in Smith's experience, his role as fire captain was primarily administrative and only rarely involved entering burning buildings and rescuing victims. (DSMF ¶ 19; PSAMF ¶¶ 174-175.)

In January of 2014, Smith was diagnosed with a mildly dilated ascending aorta. (DSMF ¶ 24.) Smith did not inform his employer of his condition, and he returned to work without any restrictions for the remainder of 2014. (DSMF ¶ 25; Pl.'s Resp. to DSMF ¶ 25; PSAMF ¶88.)

In February of 2015, Smith was hospitalized for chest pain. (DSMF ¶ 26.) Dr. Shabbir Reza of Southern Maine Healthcare observed that Smith's enlarged aorta had grown and diagnosed him as having a thoracic aortic aneurism. (PSAMF ¶ 91.) Dr. Reza opined that Smith could return to work but that he should not lift more than forty pounds. (PSAMF ¶ 92.)

The Sanford Fire Department did not have a written policy requiring a firefighter hospitalized for chest pain to be medically cleared before returning to work. (PSAMF ¶

2

89.) Even so, Fire Chief Steven Benotti required Smith to be medically cleared before he returned to work. (DSMF ¶¶ 1, 27.)

Smith sought a second opinion from Dr. Mylan Cohen, a cardiologist with Maine Medical Partners. (PSAMF ¶ 95.) After his April 7, 2015 evaluation of Smith, Dr. Cohen wrote a note, which was provided to Defendant, stating Smith could return to work on April 14, 2015 without restrictions. (DSMF ¶¶ 35-36; PSAMF ¶ 98.) It was Dr. Cohen's opinion that Smith could lift heavy gear and equipment; drag a hose line; carry hand tools while wearing a self-contained breathing apparatus ("SCBA"); raise a ladder while wearing an SCBA; assist in removing a victim from a fire while wearing an SCBA; and that a "risk of rupture of the thoracic aorta at this size is very small." (PSAMF ¶¶ 99, 103.)

Chief Benotti required Smith to see another physician, Dr. Paul Upham at Southern Maine Healthcare, in order to obtain a "Fitness for Duty Evaluation." (PSAMF ¶ 113.) Dr. Upham examined Smith and issued a report used in workers compensation cases known as the M-1 Report that imposed a 40-pound weightlifting restriction pending further consideration. (DSMF ¶ 40.) Chief Benotti informed Dr. Upham that Sanford Fire Department firefighters are expected to be able to lift 100 pounds. (*See* PASMF ¶ 120; Def.'s Resp. to PASMF ¶ 120.) No such requirement appears in Smith's job description or in Department policies or regulations. (PSAMF ¶¶ 121, 129.) Dr. Upham was also given a copy of the National Fire Protection Association ("NFPA") 1582 standards. (DSMF ¶ 41.)[2] On May 22, 2015, Dr. Upham subsequently provided the

---

[2] The National Fire Protection Association is a trade organization that promulgates model codes and standards. (*See* PSAMF ¶¶ 107-108.) NFPA 1582 is a standard addressing occupational/medical guidelines, including: the ability to lift and carry heavy objects while wearing an SCBA; the ability to walk up stairs wearing an SCBA while carrying up to forty pounds of equipment; and the ability to drag victims in excess of 200 pounds. (DSMF ¶¶ 78-82; Pl.'s Resp. to DSMF ¶¶ 78-82.) NFPA 1582 classifies aortic aneurisms as a disqualifying medical condition. (DSMF ¶¶ 83-85; Pl.'s Resp. to DSMF ¶¶ 78-82.) Plaintiff claims, and Defendant

3

City with a revised M-1report increasing the weightlifting restriction on Smith "to seventy-five pounds (performed rarely)." (DSMF ¶ 46.)

Based on the weightlifting restrictions recommended by Drs. Reza and Upham, and without consulting Dr. Cohen, Defendant concluded that Smith would not be allowed to return to work. (DSMF ¶ 48; PSAMF ¶ 124.) On June 5, 2015, Smith met with Chief Benotti, Assistant Fire Chief Cutter, and Sanford's Human Resources Director, Missy Flayhan. (PSAMF ¶ 125.) At the meeting, Smith was informed that he could not return to work due to the seventy-five-pound lifting restriction because he needed to be able to lift 100 pounds in order to perform his duties. (PSAMF ¶ 126.) The parties dispute whether or not Smith agreed with the City's assessment that he could not return to work with the seventy-five-pound lifting restriction, and dispute whether or not Smith admitted he was unable to return to work as fire captain during the June 5, 2015 meeting. (PSAMF ¶¶ 127, 135; Def.'s Reply to PSAMF ¶¶ 127, 135.)

Smith was provided with a retirement packet and discussed options that may be available. (PSAMF ¶¶ 133-34; Def.'s Reply to PSAMF ¶¶ 133-34.) The parties disagree on whether Smith was informed that he "would have to retire" and whether Defendant encouraged him to apply for disability-based retirement. (*Id.*) Before leaving the June 5th meeting, Smith said that if he was not going to be allowed to return to work, he would not need to renew his Emergency Medical Services ("EMS") license, a statement with which Assistant Chief Cutter agreed. (PSAMF ¶¶ 137-38.) After the meeting, Smith cleaned out his locker in order to make space for the individual filling in for him. (PSAMF ¶ 139.) Smith remained on disability leave for several months. (PSAMF ¶ 140.)

---

denies, that Chief Benotti told Smith that this standard prevented his return to work. (PSAMF ¶ 106; Def.'s Reply to PASMF ¶ 106.) After his termination, Smith learned that Defendant "disavowed" NFPA 1582. (PSAMF ¶ 112.)

4

On October 2, 2015, the City sent Smith a letter notifying him that he would be terminated effective October 31, 2015, stating he had been unable to perform his duties since March of 2015. (PSAMF ¶¶ 142-143.) The letter also stated that the June 5th meeting had been held "to discuss . . . the City's inability to accommodate the restrictions due to the nature of your position." (PSAMF ¶ 144.) The seventy-five-pound weightlifting restriction was the asserted basis for the termination. (PSAMF ¶ 145.)[3] Defendant factored in the weight of worn equipment as counting toward Smith's weightlifting restrictions. (PSAMF ¶ 159.)[4]

Chief Benotti considered Mr. Smith to have an aneurism, which affected his ability to work; believed Smith's condition lasted over six months; and concluded that it "impaired his health to a significant extent compared to what the ordinary public experiences." (PSAMF ¶¶ 155-156.)

## II. Standard of Review

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A material fact is "one that can affect the outcome of the case." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue is raised when sufficient evidence requires a fact-finder to "choose between competing versions

---

[3] The letter also referenced Plaintiff's EMS license. Plaintiff renewed his license after receiving the letter. Defendant denies that the license was a basis for terminating Smith. (PSAMF ¶¶ 146-147.)

[4] Dr. Cohen opined that the weight of worn equipment should not count toward the lifting restriction for patients with aneurisms. (PSAMF ¶ 162.) Defendant objects to this opinion as beyond the scope of Dr. Cohen's expert witness designation. (Def.'s Reply to PSAMF ¶ 162.) Resolution of this dispute is not essential to ruling on the present motion.

of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

A plaintiff seeking to avoid summary judgment must present a *prima facie* case for the claim(s) asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48. Facts in dispute are viewed in the light most favorable to the nonmoving party. *Reid v. Town of Mount Vernon*, 2007 ME 125, ¶ 2, 932 A.2d 539.

### III. Discussion

When an employment discrimination claim based on disability is challenged by motion for summary judgment, a "three-step, burden shifting analysis" is applied. *Carnicella v. Mercy Hosp.*, 2017 ME 161, ¶ 16, 168 A.3d 768 *cert. denied* 2018 U.S. LEXIS 1432 (Feb. 26, 2018); *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 14, 45 A.3d 722. The employee must make an initial *prima facie* showing with regard to three elements: (1) he has a disability; (2) he is otherwise qualified, with or without reasonable accommodations, to perform the essential functions of his job; and (3) the employer terminated him based in whole or part on his disability. *Id.* If this showing is made, the employer must establish a legitimate, nondiscriminatory reason for its actions. *Id.* Then, if the employer meets that burden, the employee must produce evidence that the employer's reason was a pretext. *Id.*

Defendant has moved for summary judgment on the grounds that Smith has not met his initial burden of establishing a *prima facie* discrimination claim; Smith was legitimately terminated for safety reasons; and Smith's failure to request reasonable accommodations precludes his claim. The court concludes that Plaintiff has made a sufficient *prima facie* showing to support his claim and that there are material facts in dispute as to the defenses raised, thereby precluding summary judgment.

6

## A. Plaintiff's Initial *Prima Facie* Showing

### 1. Disability

The first element considers whether the employee has a disability. The Maine Human Rights Act provides in 5 M.R.S. § 4553-A(1) several, alternate definitions of "physical or mental disability," including the following which are relevant to this case. An individual is considered to have a disability if he has a "physical . . . impairment that substantially limits one or more of a person's major life activities," 5 M.R.S. § 4553-A(1)(A)(1); a "physical . . . impairment that significantly impairs physical or mental health," 5 M.R.S. § 4553-A(1)(A)(2); "a record" of a condition that meets the definition of physical impairment in subsection A(1) or subsection A(2), 5 M.R.S. § 4553-A(1)(C); or is "regarded as having or likely to develop" a condition that meets the definition of physical impairment in subsection A(1) or subsection A(2), 5 M.R.S. § 4553-A(1)(D).

For purposes of this motion, Plaintiff has made a *prima facie* showing that he may fall within one or more of these definitions of disability. There is sufficient record evidence to generate a factual dispute as to whether Smith has a physical impairment that substantially limits a major life activity of "working" in the class of firefighter jobs and/or can impair one's health to a significant extent as compared to what is ordinarily experienced in the general population. *See* 5 M.R.S. §§ 4553-A(1)(A)(1),(2). There is "a record" of such condition; and there are material facts in dispute as to whether Smith "was regarded" by Defendant as having or likely to develop such a condition. *See* 5 M.R.S. §§ 4553-A(1)(C),(D).

### 2. Qualified to Perform Essential Job Functions

The second element considers whether the employee is "qualified" to do a job in light of available, reasonable accommodations by examining (i) whether the he could "perform the essential functions of the job;" and (ii) "if not, whether any reasonable

7

accommodations by the employer would enable him to perform those functions." *Carnicella*, 2017 ME 161, ¶ 19, 168 A.3d 768 (quoting *Ward v. Mass. Health Research Inst., Inc.*, 209 F.3d 29, 33 (1st Cir. 2000)) (internal quotation marks, citations and alterations omitted). Determination of whether a particular task constitutes an "essential function" of a job is "ordinarily a question of fact for the fact-finder." *Id.* ¶ 20 n.5 (citing *Daniels*, 2012 ME 80, ¶ 16, 45 A.3d 722; *Pinkham v. RiteAid of Me., Inc.*, 2006 ME 9, ¶ 9, 889 A.2d 1009). A number of factors are relevant to this determination, including: (i) an employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement, if any; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar positions. *See* 94-348 C.M.R. ch. 3, § 2(9)(C) (effective Sep. 24, 2014).

Given the range of factors relevant to this determination and taking into consideration the instant record as a whole, there are material facts in dispute and therefore summary judgment is not justified. This is a determination more appropriately made by the fact-finder at trial. *See Daniels*, 2012 ME 80 ¶ 16, 45 A.3d 722 (holding that whether some or all of employee's responsibilities were essential and whether employee can actually perform them are questions for a fact-finder); *see also Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 127 (D. Me. 2010) (applying federal law) ("Summary judgment is rarely appropriate when there is a dispute about an essential

function because the inquiry involves fact-sensitive considerations and must be determined on a case-by-case basis.").[5]

### 3. Adverse Treatment Based on Disability

The third element requires a showing that adverse employment action was taken because of the employee's disability. Plaintiff's burden at this stage is merely to adduce evidence that he suffered adverse treatment "based in whole *or in part* on his disability." *Daniels*, 2012 ME 80 ¶ 14, 45 A.3d 722. There is sufficient record evidence, although disputed, to support this element of the *prima facie* showing. *See Carnicella*, 2017 ME 161, ¶ 17, 168 A.3d 768.

### B. Safety Defense

An employer is permitted to discharge a disabled employee if, "because of the physical or mental disability, [he] is unable to perform the duties or to perform the duties in a manner that would not endanger the health or safety of the individual or others." 5 M.R.S. § 4573-A(1-B). The employer bears the burden of establishing that "it had a factual basis to believe that, to a reasonable probability, the employee's physical handicap renders him unable to perform his duties or to perform such duties in a manner which will not endanger his own health or safety or the health or safety of others." *Maine Human Rights Comm'n v. Canadian Pacific, Ltd.*, 458 A.2d 1225, 1234 (Me. 1983).

There are conflicting medical opinions on Plaintiff's capabilities and whether he could perform his job without restrictions at minimal risk to others. Because material

---

[5] Defendant's reliance on *Adair v. City of Muskogee*, 823 F.3d 1297, 1310 (10th Cir. 2016) as dispositive is not persuasive because the case is factually distinguishable. *Adair* held that a fire department's HazMat Director was not qualified to perform the essential functions of his job as a result of a permanent back injury. The weightlifting requirement was an essential function of the job based on express regulations, and three evaluating medical experts unanimously concluded the plaintiff was incapable of meeting that standard. *Id.* at 1301-02, 1307-10.

facts remain in dispute with respect to this defense, summary judgment is not warranted. *See Rooney v. Sprague Energy Corp.*, 483 F. Supp. 2d 43, 60 (D. Me. 2007) (finding that conflicting opinions as to employee's ability to perform duties safely preclude summary judgment on basis of safety defense); *Lavin v. Caleb Brett USA, Inc.*, 1991 U.S. Dist. LEXIS 18827, at *5 (D. Me. 1991) (summary judgment precluded by disputed material facts concerning plaintiff's medical condition and safety risks posed by continued employment).

## C. Reasonable Accommodation

An employer's failure to offer reasonable accommodations to a *known* physical or mental limitation of an otherwise qualified employee with a disability may constitute a discrete employment discrimination claim under the Maine Human Rights Act. 5 M.R.S. § 4553(2)(E); *see Kezer v. Cent. Me. Med. Ctr.*, 2012 ME 54, ¶ 18, 40 A.3d 955. An employer's duty to accommodate is "ordinarily activated" by a request that is "sufficiently direct and specific" so as to provide notice of the needed accommodation. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 129 (1st Cir. 2009); *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007). In addition, the requested accommodation must be reasonable—that is, the requested accommodation must be both consistent with the essential functions of the job and feasible for the employer under the circumstances. *Freadman*, 454 F.3d at 103.

Defendant contends that Plaintiff's claim fails as a matter of law because he did not make a direct and specific accommodation request, and, even if he did make such a request, it was not a reasonable one.

The requirement that an employee make a specific request for accommodation "relates to the fact that anti-discrimination laws are written in terms of the failure to accommodate *known* disabilities and identifiable accommodations." *Venable v. T-Mobile*

*USA, Inc.,* 2008 U.S. Dist. LEXIS 94380, *33-34 (emphasis in original). The law "does not provide that a request cannot be conveyed verbally or that an employer cannot be found to have denied a request that is never formally submitted in writing." *Farnham v. Walmart Stores East, L.P.,* 2014 U.S. Dist. LEXIS 169202, *13 (Levy, J.) (citing *Venable,* 2008 U.S. Dist. LEXIS 94380). The determination of whether an employee's action "constitutes a sufficiently direct and specific request for accommodation that is linked to some disability is a question of fact." *Id.* (citing *Freadman,* 484 F.3d at 103-04). Viewing the record in the light most favorable to Plaintiff for purposes of this motion, there are sufficient facts—though disputed—that support the conclusion that Defendant had sufficiently specific notice of a needed accommodation. Moreover, for the reasons discussed above, there are material facts in dispute concerning which duties and functions of Smith's job were essential so as to preclude summary judgment at this point with respect to Defendant's position that any accommodation on the weightlifting requirement would not have been a reasonable one.

## IV. Conclusion and Order

The court concludes that Plaintiff has made the initial *prima facie* showing required and that there are genuine disputes of material facts which preclude summary judgment. It is hereby ORDERED and the entry shall be: "Defendant's Motion for Summary Judgment is DENIED." The clerk may enter this Order on the docket by reference pursuant to M.R. Civ. P. 79(a).

SO ORDERED

Dated: August 30, 2019

Wayne R. Douglas
Justice, Superior Court

ENTERED ON THE DOCKET ON: 8/30/19

11